This case grew out of an application made to the county court of Oklahoma county by Mrs. Lou B. Gardner, surviving wife of C. A. Gardner, deceased, to have certain lots in Oklahoma City and buildings thereon set apart to her as a homestead.
The facts are that deceased had made a will disposing of his property and naming his wife as executrix, but that she on making her final report to the county court as executrix, elected to take under the statute rather than under the will, wherefore she asked that said property be set apart as a homestead during her lifetime. The terms of the will thus became immaterial and are left out of the case.
At the hearing of her application, two married daughters of deceased by a former wife objected to having said lots and the buildings thereon set apart to the surviving wife as a homestead, for the reason that there were two separate buildings on said lots, one being a cottage on the rear of said lots, and in which cottage deceased and wife resided at the time of his death, and the other a two-story brick veneer building, containing four separate apartments, on the front of said lots, which was rented to tenants, that such lots and buildings, being thus used for business purposes as well as for homestead *Page 28 
purposes by deceased, could not all be legally held as a homestead and could not be set apart as such to the surviving wife.
The county court found that said lots had been used and occupied by the deceased and his wife as a "business homestead", but that it would be impracticable to divide said property so as to set apart the portion on which the cottage was located and designate it as the homestead, but that said property, being worth $17,000, should be sold and $5,000 of the proceeds be set apart to the widow for the purchase of a homestead, and the remainder be distributed to the heirs of the estate, and so entered his decree.
The widow appealed to the district court, and upon a trial de novo the district court also adjudged that said lots were not susceptible of division and could not be partitioned, and further held that they could not be sold for any purpose during the lifetime of the surviving wife without her consent, and decreed that said lots, in their entirety, together with the buildings and improvements thereon, be set apart to her as her homestead during the remainder of her life.
Whereupon the objectors, plaintiffs in error, appealed to this court for reversal of such judgment and decree.
Plaintiffs in error contended in both county and district courts, and contend here, that inasmuch as the lots in question were being used and occupied by deceased for both business and homestead purposes at the time of his death, they constituted what is termed a "business homestead" and were subject to sale and distribution under the provision in section 1, art. 12 of the Constitution, which provision is also contained in section 6597, C. S. 1921, and which provides as follows:
"That in case said homestead is used for both residence and business purposes, the homestead interest therein shall not exceed in value the sum of five thousand dollars."
Plaintiffs in error contend that the foregoing provision authorizes the sale of said lots for the benefit of said heirs and limits the widow's homestead interest therein to $5,000, citing and quoting from many authorities.
The widow contends that the two lots in question were occupied by her and her husband as a homestead at the time of his death and that she, as surviving wife, is entitled to the free and undisturbed occupancy of said lots as her homestead during her lifetime, and that there being no debts nor liens against said property, it is not subject to sale or partition under the aforesaid provisions of the Constitution and statute, and that her right of occupancy as surviving wife is not limited by any law to a $5,000 interest in the homestead.
These respective contentions constitute the decisive issue involved, hence a determination of this issue decides the case. In determining such issue we should not confuse the exemption rights, given to the head of a family, with the homestead right, given to a surviving spouse. The exemption rights are intended to protect the head of a family against creditors only, while the right to occupy a homestead is a special individual right given to a surviving spouse and intended to protect such survivor against all persons, except holders of liens expressly made enforceable by statute. The exemption right stands between the head of a family and his creditors alone, but the right of occupancy of a homestead by a surviving spouse stands between such survivor and all the world, unless with the above exception, it is voluntarily waived.
These distinct policies of the state are manifest from both the Constitution and statutes. Section 2, art. 25 (schedule) of the Constitution put in force all territorial statutes which were not repugnant to the Constitution and not locally inapplicable. Among the statutes thus continued in force was chapter 34 of the Statutes of 1893, which was an exemption statute for the purpose of protecting the head of a family against creditors. Section 1, art. 12 of the Constitution, defines the homestead of a family, and section 2, art. 12, places the homestead under the exemption laws. Section 6597, Statutes of 1921, does likewise, and thus the state has declared its policy of protecting the head of a family against creditors. But as an individual right, separate and distinct from the exemption right given to the head of a family against creditors, the statutes have also defined and expressly conferred, upon the surviving spouse, the special right of occupancy of the homestead during the lifetime of such survivor.
Section 1224, Statutes 1921, contains the following provision:
"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, until it is otherwise disposed of according to law."
The section then enumerates certain properties which shall go to the surviving husband or wife. And section 1225 contains the following provisions: *Page 29 
In addition to the property mentioned in the preceding section, there shall also be allowed and set apart to the surviving wife or husband, * * * all such personal property or money as is exempt by law from levy and sale on execution or other final process from any court, to be, with the homestead, possessed and used by them."
Section 1226 contains the following provision:
"The homestead is not subject to the payment of any debt or liability contracted by or existing against the husband and wife, or either of them, previous to or at the time of the death of such husband or wife, except such as are secured by lien thereon, as provided in the laws relating to homesteads."
Thus it is clear that the right to possess and occupy the homestead is a special individual right given to a surviving husband or wife, and is separate and distinct from the exemption right given to the head of a family as a protection against creditors. The policy of thus protecting this individual right of a survivor is one of long standing and has been recognized and consistently upheld by this court. Funk v. Baker, 21 Okla. 402, 96 P. 608, 129 Am. St. Rep. 788; Miller v. Hassman, 24 Okla. 381, 103 P. 577: Holmes v. Holmes,27 Okla. 140, 111 P. 220; Pennington v. Woodner-McGaugh,54 Okla. 110, 153 P. 875; Bacus v. Burns, 48 Okla. 285,149 P. 1115; State Mut. Ins. Co. v. Green, 62 Okla. 214, 166 P. 105; Pioneer Mtg. Co. v. Carter, 84 Okla. 85, 202 P. 513. And has likewise been maintained by the states of California and North Dakota, which have the same probate law which we have.
Section 1, art. 12 of the Constitution, defines what the homestead shall be, the pertinent provisions of which are as follows:
"The homestead of any family, in this state, not within any city, town or village, shall consist of not more than 160 acres of land, which may be in one or more parcels, to be selected by the owner. The homestead within any city, town or village, owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner: Provided That the same shall not exceed in value the sum of $5,000 and in no event shall the homestead be reduced to less than one-quarter of an acre, without regard to value: And provided, further, that in case said homestead is used for both residence and business purposes, the homestead interests therein shall not exceed in value the sum of $5,000."
The foregoing definition, of what the homestead of a family shall be, is pertinent to the question we have before us, for the reason that section 1224, supra, Statutes 1921, expressly gives to the survivor the special right to possess and occupy the whole homestead. Whatever the homestead, as defined, of the family may have been at the death of one spouse, the survivor is entitled to all of it as a homestead. In other words, the statutes expressly say that the survivor shall have the "wholehomestead," which shall not in any event be subject to administration proceedings. And the Constitution says, "in no event shall the homestead be reduced to less than one-quarter of an acre". From these provisions of the Constitution and the statutes, it is clear that a surviving wife has a special right
to the whole homestead which "shall in noevent be subject to administration proceedings," "and in noevent shall it be reduced to less than one-quarter of an acre."
The clause "until it is otherwise disposed of according to law", contained in section 1224, supra, has no application to, nor effect upon the question presented here, for reasons which will be discussed further on.
The issue here narrows down to the sole question, whether the right of co-heirs to a property interest in the estate is superior to the survivor's right of occupancy of the homestead during the life of such survivor.
This gives rise to the question, what provision of law is there which authorizes another heir to take away from the surviving wife her right to occupy the whole homestead? None has been cited, nor has any been cited which even impliedly authorizes the courts to order the sale of a "minimum homestead site" and limit the widow's right of occupancy to a $5,000 interest in the "whole homestead", and give the remainder of the proceeds to other heirs. Nor has any law been cited by which heirs to a decedent's estate can have their interests determined and the estate disposed of according to law except through administration proceedings. The decisions cited in support of the contentions of plaintiffs in error are decisions which deal, for the most part, with the rights of creditors as against the head of a family during his lifetime. None has been cited from this state, nor from California, nor Dakota (all of which have practically the same probate law), nor from any other state, which gives heirs the right to a sale of the homestead from under the surviving wife and to limit her homestead rights to $5,000. As to what the rights of creditors might be in this case, it would be only dictum for us to say, because such question is not in this case. There are no creditors here, no creditors' rights involved, hence we decline to *Page 30 
say what their rights might be under given premises.
But it is proper for us to say what the homestead shall be, because that question is involved, and the Constitution says (section 1, art. 12, supra) that "in no event shall it be reduced to less than one-quarter of an acre."
It is also proper for us to determine the extent of her interest in the whole homestead and the extent of her right of occupancy thereof, because these questions are also involved, and the statutes say she shall be entitled to the wholehomestead. Section 1, art. 12 of the Constitution, provides that the rural homestead of any family shall consist of not more than 160 acres of land, that a city homestead shall consist of not more than one acre of land, and that in no event shall the homestead be reduced to less than one-quarter of an acre, regardless of value. From this it is manifest that a homestead is the land and not the buildings thereon; that the homestead right is the right to occupy the land rather than the right to occupy the buildings; the right to live upon the land and not the right to live under the roof of the buildings thereon. The head of a family may live in a tent or under a shade tree, if he chooses to do so, or he may build a roof which covers the entire homestead site, if he chooses to do so, but he has a right in any event to live upon the land which the Constitution says shall be his homestead, and which in no event shall be reduced to less than one-quarter of an acre. His surviving wife has the same right to occupy and live upon the same land, as a homestead which she and her husband occupied and lived upon as a homestead at the time of his death. The roof under which she resides constitutes no factor in determining the extent of her right of occupancy. It is only an appurtenance belonging to the homestead. The deceased in this case had selected two adjoining lots as his homestead. They were even less than the minimum homestead unit allowed by the Constitution, but he voluntarily elected to occupy them as his homestead. He had a right to do so, and having no creditors, owing no debts or taxes, having no liens against his homestead, he had an absolute right to occupy it and live upon it as his homestead, and had been doing so for a number of years, and was doing so at the time of his death. He had a right to live under the roof of a one-room house, or to build any number of separate houses and live in a different one each day, and so long as he owed no financial obligations to any one, he was exempt from interference with his occupancy of his homestead, and whatever rights were exempt to him under the existing circumstances, were likewise exempt to his surviving wife.
The only provisions of law cited which even tend to support the contentions of plaintiffs in error are the constitutional provision in section 1, art. 12, supra, which provides:
"That in case said homestead is used for both residence and business purposes the homestead interest therein shall not exceed in value the sum of $5,000"
— and the statutory provision in section 1224, Statutes 1921, supra, which provides:
"The survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, until it is otherwise disposed of according to law."
As to whether the above provisions might support the claim of creditors for the sale of the homestead from under the surviving wife, we do not decide, for the reasons heretofore given. But, as to whether such provisions support the demand of heirs, that such homestead be sold for their benefit and the widow be dispossessed for their benefit, we must decide that they do not.
Section 6600, Statutes 1921, expressly provides that the homestead exemption provision shall not apply where a debt is due for the purchase money of said homestead or for taxes or other legal assessments, or for work and material used in constructing improvements thereon, but the rights of heirs to dispossess the widow of her homestead right are not included in the above class, and cannot be enforced until after the death of the widow or her voluntary abandonment of the homestead; in the meantime their property rights are suspended.
This conclusion is supported by the Dakota decision in Fore v. Fore (N.D.) 50 N.W. 712, followed by this court in Holmes v. Holmes, 27 Okla. 140, 111 P. 220, Ann. Cas. 1912C, 569; Bacus v. Burns, 48 Okla. 285, 149 P. 1115; Pioneer Mfg. Co. v. Carter, 84 Okla. 85, 202 P. 513.
In Fore v. Fore, supra, construing the clause "until it is otherwise disposed of according to law," the court said:
"More felicitous language might undoubtedly have been used to express the single thought that the survivor might continue to possess and occupy the homestead as long as she preserved its homestead character and occupied it as a home. But we think the Legislature had in view also the fact that there might exist a mortgage upon the homestead property, executed by both husband *Page 31 
and wife, or that the taxes thereon might not be paid, and the homestead become liable therefor under section 2452, Comp. Laws, or that it might be liable for a mechanic's lien under the same section, or for some portion of the purchase price thereof under the succeeding section. In either of these events it might be disposed of according to law, and the occupancy of the survivor thus terminated. But we do not think it was the intention of the Legislature that the survivor should be disturbed in this occupancy, so long as the premises remained the home of the survivor, by any co-heir or devisee, and we will briefly state some of the reasons which force that conclusion. Ample provision for the establishment of the home and maintenance of the family has ever been the fixed policy in this jurisdiction."
And in Pioneer Mtg. Co. v. Carter, supra, this court said:
"The phrase 'until it is otherwise disposed of according to law' in section 6328, R. L. 1910, means 'it may be sold for taxes, or upon foreclosure of any mortgage thereon executed by both husband and wife, or upon execution to enforce judgment for the purchase price, or any part thereof, or the enforcement of mechanic's lien'."
Thus the meaning of the clause "until it is otherwise disposed of according to law" has been definitely, and in our opinion correctly, defined by both this court and the Dakota court.
The Supreme Court of North Dakota has also held definitely that the right of occupancy of the surviving wife during her lifetime is superior to the right of co-heirs to a partition of the estate.
In Calmer v. Calmer, 15 N.D. 120, 106 N.W. 684, in a controversy between co-heirs and the surviving widow, the very same condition of facts which are involved here, and involving the identical principles of law which are involved here, and every principle of law which is involved here, the court held:
"Where the homestead is indivisible without material injury, the surviving husband or wife or minor children, as the case may be, are entitled, as against the heirs or devisees, to hold the entire premises as a homestead estate, even though the property exceeds $5,000 in value."
And in Severtson v. Peoples (N.D.) 148 N.W. 1058, the court in the opinion on rehearing, referring to and approving the holding in Calmer v. Calmer, supra, said:
"The last case was a controversy between the widow and certain heirs, and it was held that the rights of the widow are superior to the rights of the heirs as to the entire homestead regardless of its value. * * * The learned judge who wrote the opinion very properly held that under such circumstances the rights of the widow and minor children to the family homestead are very properly recognized as superior to those of the heirs, if the homestead cannot be divided without material injury. The family home must be preserved intact as against the heirs whose right to inheritance is inferior in degree, and should be postponed to the rights of the decedent's family to their home, even though the homestead exceeds $5,000 in value. Indeed, in the light of such express statute to that effect, the court could not have held otherwise. Effect was merely given to the plain language of the statute. This statute is manifestly just and humane. It does not take away the heir's right of inheritance, but merely postpones the enjoyment of such right" — meaning postponement during the life of the widow, or until her voluntary abandonment.
Hence, in view of the fact that the homestead herein claimed is the minimum homestead unit provided by the Constitution, in fact, far less than the minimum allowed by the Constitution, and therefore cannot be reduced and cannot be partitioned without detriment to both the estate and the homestead right, and in view of the foregoing authorities, it is our conclusion that the judgment and decree of the district court should not be disturbed. Affirmed.
NICHOLSON, C. J., and LESTER, HUNT, CLARK, and RILEY, JJ., concur. BRANSON and MASON, JJ., not participating. PHELPS, J., disqualified and not participating.