**In re Ray Reed LINDSEY & Nancy Prudance Lindsey, Debtors,**

v.

**KINGFISHER BANK & TRUST COMPANY, Appellant.**

No. 77345.

Supreme Court of Oklahoma.

May 12, 1992.

**2**

Gary A. Bryant, Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, for appellant.

Jeffrey C. Trent, Yukon, for appellees.

ALMA WILSON, Justice:

The United States District Court for the Western District of Oklahoma has certified three questions pursuant to 20 O.S.1991, §§ 1601–1611. The questions concern the construction of 31 O.S.1991, § 1(A)(5) & (6) and are questions of first impression before this Court.

The appellees, Ray and Nancy Lindsey, filed their Chapter 7 bankruptcy petition in the Western District of Oklahoma on July 13, 1990. Pursuant to 31 O.S.1991, § 1(A)(6)[1], the Lindseys claimed farm equipment as exempt in the amount of $10,-000.00, $5,000.00 for each debtor. The appellant, Kingfisher Bank & Trust Company holds a perfected security interest in the farm equipment in an amount exceeding $100,000.00. The Lindseys valued all their farm equipment at $5,000.00.

The Lindseys live in a mobile home located on the rural real property of Mr. Lindsey's father. They neither own nor lease this land. They have done custom combining work, using their farm equipment to do specific farming work for other farmers. They have also raised cattle. The Lindseys have been farmers their entire ten-year marriage, and state an intent to continue farming and raising cattle when they emerge from bankruptcy.

Title 31 O.S.1991, §§ 1(A)(5) and (6), and (B) provide in pertinent part:

A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

\* \* \* \* \* \*

5. Implements of husbandry necessary to farm the homestead.

6. Tools, apparatus and books used in any trade or profession of such person or a dependent of such person.

\* \* \* \* \* \*

C. In no event shall any property under paragraph 5 or 6 of subsection A of this section, the total value of which exceeds Five Thousand Dollars ($5,000.00), of any person residing in this state be deemed exempt.

The issue is whether the facts of this cause allow the Lindseys to take advantage of the exemptions offered under implements of husbandry, or tools of the trade, or a combination of the two. The bankruptcy court ruled that the farming equipment qualified as tools of a trade and permitted exemption of up to $5,000.00 for each of the appellees. The appellant argues that the Lindseys do not have a homestead so that they cannot qualify for the exemption under paragraph (A)(5), and because the equipment is farm equipment, the appellees do not qualify for the exemption provided in paragraph (A)(6) either. The Lindseys reply that the exemption statutes clearly intend that a debtor be allowed to exempt $5,000.00 in equipment used in earning a living and therefore the Lindseys must qualify for an exemption under either or both of the two paragraphs. We set out and answer the certified questions below.

I. "Must a farmer own or lease a rural homestead as a condition precedent to exempting implements of husbandry under Okla.Stat. tit. 31, § 1A(5) (Supp. 1990)?"

The answer to this question depends upon the definition of the term "homestead" as it is used in 31 O.S.1991, § 1(A)(5). The exemption is for imple-

---

1. 1987 Okla.Sess.Laws, ch. 24, § 1.

ments of husbandry that are "necessary to farm the homestead." The appellant argues that if a debtor neither owns nor leases a rural homestead, he cannot farm a homestead, and is not entitled to an exemption for implements of husbandry. The Lindseys note that prior to the 1980 amendment of 31 O.S. § 1(A), the statute provided: "[T]he following property shall be reserved to every person *owning a home and residing therein....*" They argue that when the legislature amended the statute, it removed the necessity of ownership, no longer requiring the debtor to own or lease the rural homestead to receive the benefits of the exemption.

The term "homestead" has been described in 31 O.S.1991, § 2, and provides in pertinent part that the homestead of a family shall consist of not more than one hundred sixty acres of land "to be selected by the owner." [2] For the purposes of the exemption statutes, the term mandates ownership of the property. Under title 31 the homestead is property selected by the owner to be protected by the law from forced sale to meet debts. 31 O.S.1991, § 2. Although prior to the 1980 amendment of 31 O.S. § 1, subsection (1) [3] provided: "The homestead of the family shall consist of the home of the family whether the title to the same be lodged in or owned by the husband or wife." The amendments took away the described language but kept the term "homestead" in § 1(A)(5). If the legisla-

ture had chosen to change the term to "home," the implications of the paragraph would be different, given the amendments to the section. But because the term "homestead" was retained, we must answer the question posed by the United States District Court affirmatively. A farmer must own or lease a rural homestead as a condition precedent to exempting implements of husbandry under the statute.

II. "Is a farmer who neither owns nor leases rural homestead acreage entitled to claim an exemption as a tradesman or professional for property in the nature of farm equipment of a value not exceeding $5,000.00 pursuant to Okla.Stat. tit. 31, § 1A(6) (Supp.1990)?"

■ The appellant argues that because § 1(A)(5) is specific regarding farmers and § 1(A)(6) is general, referring to *any* trade or profession, that § 1(A)(5) must be applied to the exclusion of § 1(A)(6). Laws addressing a specific situation are applied to the exclusion of more general laws. *Newblock v. Bowles,* 170 Okla. 487, 40 P.2d 1097, 1100 (1935). The appellant reasons that § 1(A)(6). does not apply because the Lindseys are farmers and cannot benefit from the exemption provided for trades or professions. The Lindseys answer that the legislature intended that a debtor have tools necessary to con-

---

**2.** 1980 Okla.Sess.Laws, ch. 342, § 2. In other contexts, the term "homestead" does not depend upon ownership for rights to the occupancy of the property to exist. *Matter of Wallace's Estate,* 648 P.2d 828, 831 (Okla.1982) " 'Homestead' has both a legal and popular meaning which is identical; the residence of the family, the place where the home is. *Preston v. Ottawa County Nat. Bank,* 138 Okl. 133, 280 P. 581 (1929)."

*Grenard v. McMahan,* 441 P.2d 950, 951 (Okla.1968) "The constitutional homestead is the land itself which is occupied by the family as a home. *First Nat. Bank of Sentinel v. Anderson,* 206 Okl. 54, 240 P.2d 1066, 1069 [ (1952) ]." *In re Carothers' Estate,* 196 Okl. 640, 167 P.2d 899, 903 (1946) "The above cases [citations omitted] and numerous others indicate that this court has at all times been zealous to enforce the constitutional provisions and the statutes in order to safeguard the family in its occupancy

of the homestead. They all have reference to the constitutional homestead as distinguished from the statutory or probate homestead. The constitutional homestead is the land itself which is occupied by the family as a home. *In re Gardener's Estate,* 122 Okl. 26, 250 P. 490 [ (1926) ]; *Finerty v. First Nat. Bank,* 92 Okl. 102, 218 P. 859, 32 A.L.R. 1326 [ (1923) ]."

"The statutory or probate homestead is distinguished from the constitutional homestead. As said in *re Gardner's Estate, supra* [122 Okl. 26, 250 P. 490]: 'thus it is clear that the right to possess and occupy the homestead is a special individual right given to a surviving husband or wife, and is separate and distinct from the exemption right given to the head of a family as a protection against creditors. The policy of thus protecting this individual right to a survivor is one of long standing, and has been recognized and consistently upheld by this court.' "

**3.** 1978 Okla.Sess.Laws, ch. 190, § 6.

tinue to make a living for his family and not be a burden on the state.

Section 1(A)(5) provides an exemption for implements of husbandry necessary to farm the homestead. As addressed previously in part I, if neither of the spouses have an ownership interest in the land that they farm, the paragraph is simply inapplicable. It does not limit those who have certain agricultural skills and use those skills to make a profit on the real property of others. The appellant desires to lump all farming activities together and restrict any exemption to debtors who have an ownership interest. We refuse to characterize the issue so narrowly. The issue is whether or not the skills used by the Lindseys can be described as a trade as provided in § 1(A)(6). Both parties cite *In re Siegmann*, 757 P.2d 820 (Okla.1988), in support of their respective arguments.

*Siegmann* cited *Davis v. Wright*, 194 Okla. 451, 152 P.2d 921 (1944), that the statutes exempting property from forced sale are to be given a reasonable construction to effect their intent and purpose and in case of doubt this Court will resolve that doubt in favor of the exemption. The *Siegmann* case construes § 1(A)(6). The case states the intent of the statute is to insure that the items necessary to allow a person to continue to work to support himself are secured to that person exempt from seizure and sale. *Siegmann*, 757 P.2d at 822. One of the items that the debtor in *Siegmann* was attempting to claim as exempt was a 1979 Ford tractor. The debtor was characterized as a contractor and not as a farmer. We found a Kansas statute to be compatible with the intended scope of our own and noted that under the Kansas "tools of the trade" exemption the property covered included that which was reasonably necessary, convenient or suitable for

the production of work. *Siegmann*, 757 P.2d at 822.

The references to *Siegmann* cited above reveal that "work" and "trade" are used synonymously. This is consistent with the common definition of trade, which is "an occupation" and especially refers to one requiring skilled labor.[4] In holding that a butcher was engaged in a trade, this Court found that properly preparing and cutting meats has to be learned, required both mechanical skill and experience, and demanded as much study and development as is required in many of the other trades. *Hoyt v. Pullman*, 51 Okla. 717, 152 P. 386, 387 (1915). The federal bankruptcy judge in the cause before us found that custom combining and plowing for other parties was a trade. Because of the skill involved and the necessity of experience in operating the equipment, we hold that a "farmer" who neither owns nor leases a homestead but who makes his living doing custom combining and plowing for others qualifies as a tradesman, and is entitled to the exemption found in 31 O.S.1991, § 1(A)(6).

III. "May Okla.Stat. tit. 31, §§ 1A(5) and 1A(6) be construed together to permit the exemption of up to $5,000.00 of property in the nature of farm equipment to a farmer who neither owns nor leases rural real estate?"

The appellant expresses concerns that construing 31 O.S.1991, § 1(A)(5) and (6) together could result in a farmer-debtor's being allowed a $5,000.00 exemption for both paragraphs. The appellant observes that this result would obviously work to the exclusive benefit of the farmer-debtor. An examination of § 1 reveals that several of the exemptions listed work to the exclusive benefit of the rural debtor. Paragraphs (A)(10), (A)(11), (A)(12), (A)(15), (A)(16), (A)(17),[5] and the 160 acre exemption

---

4. The American Heritage Dictionary 1284 (2d college ed. 1985).

5. 31 O.S.1991, § 1 provides in pertinent part:

"A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other

species of forced sale for the payment of debts, except as herein provided:

   \*     \*     \*     \*     \*     \*

"10. Five milk cows and their calves under six (6) months old, that are held primarily for the personal, family or household use of such person or a dependent of such person;
"11. One hundred chickens, that are held primarily for the personal, family or household

under § 2,[6] all provide benefits to a rural debtor that are not available to one living in a city, town or village. Clearly, the legislature did intend to give benefits to rural debtors that are not given to urban debtors. Additionally, if a homestead consisted of a parcel of land containing 160 acres, on which cattle, chickens, horses, hogs, and/or sheep were kept, such a homestead could be called a farm and the residents, farmers. Therefore, the legislature did intend to give added benefits to farmers that are not available to other debtors.

■ Paragraph (A)(5) exempts "Implements of husbandry necessary to farm the homestead." Husbandry is "[t]he cultivation of crops and the breeding and raising of livestock."[7] The verb form of "farm" means "[t]o cultivate or produce a crop on."[8] The paragraph in itself contains no requirement that a debtor be engaged in the occupation of farming to earn a living. In fact, combined with (A)(17), one may conclude that (A)(5) provides a method for exempting the implements necessary to raise the provisions for home consumption and feeding the exempt stock. If the debtor also earns a living by farming, he may make use of (A)(6) to exempt his tools of trade, subject to the $5,000.00 limitation in subsection C. If a court finds that both debtors are engaged in the occupation of farming, then the exemption is $5,000.00 for each debtor because subsection C allows an exemption in value that does not exceed $5,000.00 "of any person."

As previously stated in answer to the first certified question, paragraph (A)(5) has no application to the facts certified to this Court, because the Lindseys neither own nor lease the rural real estate on which they reside. However, subsection C provides that paragraph (A)(6) must be applied to exempt tools used in the farming trade, not to exceed a total value of $5,000.00 per person (per debtor).

Paragraph (A)(6) and subsection C permit an exemption up to the value of $5,000.00 for tools used in farming to earn a living. The Lindseys are entitled to a $5,000.00 exemption per debtor, even though they do not own or lease their rural real estate.

CERTIFIED QUESTIONS ANSWERED.

OPALA, C.J., HODGES, V.C.J., and LAVENDER, KAUGER and SUMMERS, JJ., concur.

SIMMS and HARGRAVE, JJ., concur in part, dissent in part.

---

use of such person or a dependent of such person;

"12. Two horses and two bridles and two saddles, that are held primarily for the personal, family or household use of such person or a dependent of such person;

\* \* \* \* \* \*

"15. Ten hogs, that are held primarily for the personal, family or household use of such person or a dependent of such person;

"16. Twenty head of sheep, that are held primarily for the personal, family or household use of such person or a dependent of such person;

"17. All provisions and forage on hand, or growing for home consumption, and for the use of exempt stock for one (1) year...."

**6.** 31 O.S.1991, § 2 provides in pertinent part:

"The homestead of any family in this state or the homestead of a single, adult person in this state, not within any city, town or village, shall consist of not more than one hundred sixty acres of land, which may be in one or more parcels, to be selected by the owner."

**7.** *The American Heritage Dictionary* 628–29 (2d College Ed.1985).

**8.** *The American Heritage Dictionary* 490 (2d College Ed.1985).