Dear District Attorney Loring,
¶ 0 This office has received your request for an Attorney General Opinion. You have asked, in effect, the following question:
Which entity is legally responsible for paying the medical billsof a State's witness brought into a county from an out-of-stateprison?
¶ 1 Pursuant to the Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Procedures, 22 O.S.1991 and Supp. 1998, §§ 721-727 (hereinafter "Uniform Act"), a prisoner was brought to Oklahoma from Missouri to testify in a murder trial.[1] The charge was filed in Delaware County, but was ultimately moved to Payne County on a change of venue. The prisoner was therefore brought from Missouri to Payne County pursuant to a subpoena. Before he testified, the prisoner experienced what county authorities thought was a heart attack. He was taken to the hospital for testing, and released the following day. Medical bills totaling over $5,000 were incurred. Request for payment was made to the Missouri prison system, the Oklahoma Court Administrator, the District Attorneys Council and Delaware County, all of whom refused to pay.
¶ 2 The United States Supreme Court has held that local governments have a constitutional duty to provide medical care for inmates. City of Revere v. Massachusetts General Hospital,463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). Your question asks who is responsible for the payment of those medical bills.
 I. MISSOURI
¶ 3 There is no explicit provision in the Uniform Act stating whether it is the responsibility of the requesting state or the state where the potential witness lives to pay this type of expense. See 22 O.S. 1991 and Supp. 1998, §§ 721-727; Mo. Ann. Stat. §§ 491.400-491.450 (Vernon 1996). However, Oklahoma's code of criminal procedure provides that a witness appearing from another State under the Uniform Act shall be reimbursed by this State for normal travel and expenses. 22 O.S. Supp. 1998, §718[22-718]; see also 22 O.S. 1991, § 723[22-723](C) (witness to be paid "travel and expenses" pursuant to Section 718). Concerning unanticipated expenses, Oklahoma appellate courts appear to have resolved that as well. Cf. Hillcrest Medical Center v. OklahomaDepartment of Corrections, 675 P.2d 432, 436 (Okla. 1983) (Department of Corrections inmate brought to Tulsa County pursuant to a writ of habeas corpus ad prosequendum at the request of Tulsa County. As the DOC had no choice but allow the inmate to be temporarily transferred to the jail of the requesting county, the county, not the DOC, was responsible for medical bills incurred while the inmate was being transported back to DOC custody); see also Rivera v. District Court ofComanche County, 851 P.2d 524 (Okla. 1993) (right to compel attendance of material witnesses provided by the Uniform Act,together with financial responsibility for their attendance,
are statutory expressions of state and federal constitutional rights to compulsory process and fair hearing).
¶ 4 Therefore, by analogy, Missouri is not responsible for the medical costs of its inmate while that inmate was in Oklahoma custody pursuant to lawful court order.
 II. COURT FUND
¶ 5 The Uniform Act at 22 O.S. 1991, § 723[22-723], provides that if a witness is summoned to appear and testify in Oklahoma, the witness shall be reimbursed "travel and expenses" pursuant to Section 718 of Title 22. Section 718 provides that if a witness is subpoenaed pursuant to the Uniform Act, he shall be reimbursed "as prescribed by law for travel and expenses at rates not to exceed those prescribed by law for reimbursement of state employees traveling interstate." 22 O.S. Supp. 1998, § 718[22-718].
¶ 6 What can be paid out of the court fund is dictated by statute. The applicable statute initially states that claims against the fund "shall include only expenses lawfully incurred for the operation of the court in each county." 20 O.S. Supp.1998, § 1304[20-1304](A). The term "expenses" is narrowly defined:
 The term "expenses" shall include the following items and none others:
. . . .
 4. Witness fees and mileage for witnesses subpoenaed by the defense as set out in Section 81 et seq. of Title 28 of the Oklahoma Statutes, except that expert witnesses for county indigent defenders shall be paid a reasonable fee for their services;
. . . .
 10. Attorney's fees for indigents in the trial court and on appeal;
. . . .
12. Transcripts ordered by the court;
. . . .
15. Interpreter fees;
 16. Necessary travel expenses of the office of county indigent defender approved by the court fund governing board;
 17. Rent for county indigent defender's office outside of the county courthouse;
 18. Computer equipment for county indigent defender's office;
 19. Reasonable compensation for expert, investigative, or other services authorized by the court for indigent defendants not represented by a county indigent defender or the Oklahoma Indigent Defense System, if requested[.]
20 O.S. Supp. 1998, § 1304[20-1304](B) (emphasis added).
¶ 7 A cursory glance of this statute shows that, if the court fund pays for expenses of any witnesses, it is limited to those subpoenaed by the defense. There is no provision for paying expenses of State witnesses out of the court fund.
¶ 8 The provision dealing with change of venue provides that:
 [T]he court fund of the county from which the action is removed shall be liable for the expense and charge of removing, delivering and keeping the prisoner, and the fees of jurors and witnesses in attendance during the trial, court reporter's fees, all fees and mileage of the sheriff, and the per diem of bailiffs during the time said cause is on trial, and such other expenses as may be lawfully incurred incident to the trial, which costs and expenses shall be approved by the Court Administrator of the Supreme Court of the State of Oklahoma and certified by the clerk of the court to which the action was transferred to the court clerk of the county from which the cause was removed and shall show the name of each person and the amount due to him.
22 O.S. Supp. 1998, § 562[22-562](C).
¶ 9 It cannot be seriously argued the words "the prisoner" here would refer to a prisoner brought from out of state to testify; rather, it refers to the defendant, if he is not free on bond. This interpretation is strengthened by the separate clause in the subsection dealing with witnesses. There is the phrase "expenses as may be lawfully incurred incident to the trial"; however, in light of the limitations in 20 O.S. Supp. 1998, § 1304[20-1304](B) as to what constitutes "expenses," it would appear that, by definition, this would not be a lawful expense.
¶ 10 Consequently, the court fund is not responsible for the medical costs incurred by a prisoner being held as a witness for the prosecution.
 III. DISTRICT ATTORNEYS FUND
¶ 11 There is a specific statute dealing with payment of witness fees and mileage. It reads:
 Any witness appearing in obedience to an order, subpoena, or other lawful compulsion at any stage of a criminal case or proceeding, grand jury proceeding and in any civil case or proceeding in which the party seeking the attendance of the witness is represented by the district attorney, shall be paid, from any monies available for the operations of the district attorney's office in the county where attendance is required, the fees and mileage at the rate prescribed by law.
28 O.S. Supp. 1998, § 82[28-82](A).
¶ 12 By its own language, payment is limited to "fees and mileage." Therefore, no medical expenses could be paid under this statute.
¶ 13 There is a second fund established by statute for use by district attorneys. That reads:
 There is hereby created in the State Treasury a revolving fund for the Office of the Attorney General to be designated the "District Attorneys Evidence Fund". The fund shall be a continuing fund, not subject to fiscal year limitations, and shall consist of any monies transferred thereto by an act of the Legislature. All monies accruing to the credit of said fund are hereby appropriated and may be budgeted and expended by the District Attorneys Council for necessary expenses relative to any pending case within the official responsibility of the offices of the district attorneys. Expenditures from said fund shall be made upon warrants issued by the State Treasurer against claims filed as prescribed by law with the Director of State Finance for approval and payment.
19 O.S. 1991, § 215.40[19-215.40] (emphasis added).
¶ 14 Here, the key phrase is "necessary expenses relative to any pending case within the official responsibility of the offices of the district attorneys." The responsibilities of a district attorney are set forth 19 O.S. Supp. 1998, § 215.4[19-215.4].
The district attorney or assistants shall appear in all trial courts "and prosecute all actions for crime committed in the district, whether the venue is changed or not." Furthermore, the district attorney or assistants shall defend the county in all civil actions where any county in the district is interested, or a party; and assist grand juries, if required. Prosecution of a criminal action, is an "official responsibility" of the district attorney's office; however, the requirement is that the fund be used "for necessary expenses relative to any pending case within the official responsibility of the offices of the district attorneys." The question then becomes whether medical expenses of a prisoner brought from another state at the request of a district attorney constitute an "official responsibility" of the district attorney's office. This question is best answered when this statute is compared with the responsibilities of a county sheriff toward prisoners housed in the county.
 IV. SHERIFF
¶ 15 A statute has been enacted which specifically deals with the responsibility of a sheriff toward prisoners in custody. It reads:
 It shall be the duty of the sheriff of each county to provide bed clothing, washing, board and medical care when required, and all necessities for the comfort and welfare of prisoners . . . and he shall be allowed such compensation for services required . . . as may be prescribed by the county commissioners.
57 O.S. 1991, § 52[57-52].
¶ 16 On the subject of medical care, appellate courts have consistently ruled that the county sheriff is liable for medical expenses incurred by prisoners in his care. The most recent pronouncement was set forth in State ex rel. Department of HumanServices v. Board of County Commissioners of McClain County,829 P.2d 961 (Okla. 1992). There, a prisoner was in custody of the McClain County Sheriff awaiting a preliminary hearing. While there, the prisoner briefly escaped. While on escape status he sustained injuries which required medical treatment. The prisoner was initially taken to a local hospital, then to Oklahoma Memorial Hospital (operated by the Department of Human Services ("DHS")), where medical bills totaling approximately $85,000 were incurred. When DHS presented the bill to the county, the county refused to pay it. Rejecting an argument the county was not responsible for the bills because the prisoner had escaped and therefore was not in physical custody at the time the injuries were sustained, the Court observed 57 O.S. 1991, § 52[57-52] "clearly place[d] upon the county sheriff the duty to provide medical care to any prisoners of the county who are in need of it, regardlessof how the need arises. It is silent as to the cause of a prisoner's injury or illness, but rather, applies whenever the prisoner is in need of medical care." Id. at 962 (emphasis added).
¶ 17 Legal custody of the prisoner seems to be the key. InHillcrest Medical Center v. State of Oklahoma ex rel. Departmentof Corrections, 675 P.2d 432 (Okla. 1983), the Court held the Oklahoma Department of Corrections (DOC) was not responsible for services rendered to a former DOC prisoner because he was no longer in the custody of DOC. The Tulsa County Sheriff's Department was liable because the prisoner had been ordered from DOC to Tulsa County to face criminal prosecution there. After prosecution, the prisoner was being taken back to DOC by a sheriff's deputy when he was injured in an automobile accident, requiring medical treatment. Tulsa County had argued that the DOC retained custody of the prisoners regardless of their location, but the Court disagreed:
 [The prisoner] was committed to the county's care to face criminal charges against him, and as such, the county was responsible for his immediate medical needs. 57 O.S. 1981 § 42[57-42](3) states that persons are properly confined in a county jail when the purpose of the confinement is to hear additional charges against him; therefore, the county sheriff is responsible for their needs. The Tulsa County Sheriff had custody of [the prisoner] for approximately two (2) months before the accident and at the time the accident occurred; therefore, at all times relevant to this action, it was the Tulsa County sheriff, not the DOC, who was in the best position to avoid such an occurrence.
675 P.2d at 436.
¶ 18 In City of Tulsa v. Hillcrest Medical Center,292 P.2d 430 (Okla. 1956), the Court held charges brought by the medical center for treatment given Tulsa city prisoners were properly chargeable to the city even though "[s]ome of these prisoners were ill or injured at the time of their arrest." Id. at 431. What is notable here is that Section 52 was not applicable to the city police department, nor was there any specific statute which imposed a duty upon the city to provide medical care. Despite this, the Court determined the emergency services given by the hospital were properly charged against the police department which had custody of the prisoners when they were taken to the hospital. In the words of another appellate court, "[i]mprisonment is the key." State ex rel. Dept. of HumanServices v. Board of County Commissioners of Oklahoma County,831 P.2d 1006, 1008 (Okla.Ct.App. 1991).
¶ 19 If a county legally holding a prisoner can be held responsible for medical expenses of that prisoner, the next logical issue is to determine which county is responsible. The case was filed in Delaware County, but was ultimately transferred to Payne County on a change of venue. The statute dealing with change of venue provides that:
 [T]he court fund of the county from which the action is removed shall be liable for the expense and charge of removing, delivering and keeping the prisoner,
and the fees of jurors and witnesses in attendance during the trial, court reporter's fees, all fees and mileage of the sheriff, and the per diem of bailiffs during the time said cause is on trial, and such other expenses as may be lawfully incurred incident to the trial. . . .
22 O.S. Supp. 1998, § 562[22-562](C).
¶ 20 Although the statute provides the court fund shall liable for costs pertaining to "the prisoner," it seems clear that, in context, "the prisoner" referred to is the criminal defendant, not a witness who is being held awaiting his turn to testify.[2]
¶ 21 The prisoner was being lawfully held in the Payne County jail, not the Delaware County jail. See 57 O.S. 1991, § 42[57-42]
("The common jails in the several counties in the charge of the respective sheriffs, shall be used as prisons . . . [f]or the detention of persons who may be duly committed, to secure their attendance as witnesses on the trial of any criminal cause."). In the absence of any statute having the effect of holding the Delaware County jail liable, expenses would have to be borne by Payne County, as the prisoner was in lawful custody at a facility in that county.
 V. SHERIFF v. PROSECUTOR
¶ 22 Having determined that both the prosecutor and the sheriff have potential liability for medical expenses of an imprisoned State's witness, the next task is to determine which of the two should pay.
¶ 23 Here there exists a statute specifically dealing with the responsibility of sheriffs to provide medical care for prisoners housed in county jails. There also exists a statute more generally placing responsibility for expenses in pending cases on the district attorney's office, but which does not specifically deal with the subject of medical care of prisoners intended to be witnesses. It is a standard rule of statutory construction that "where two statutes, one specific and one general, relate to the same subject, the specific statute controls and is regarded as an exception to the terms of the general statute, because the legislature is assumed not to have intended conflict." Wagnon v.State Farm Fire and Casualty Company, 951 P.2d 641, 646 (Okla. 1997) (citing Kearney v. Mid-Century Ins. Co., 526 P.2d 169,172 (Ariz.App. 1974)). The Oklahoma Supreme Court has also held that in the construction of statutes, "Laws addressing a specific situation are applied to the exclusion of more general laws."Wagnon, 951 P.2d at 646 (citing Lindsey v. Kingfisher Bank Trust Company, 832 P.2d 1, 3 (Okla. 1992)).
¶ 24 Here, the statutes specifically place responsibility for medical care of prisoners with the county sheriff. Under the principles of statutory construction stated above, 57 O.S. 1991,§ 52[57-52] dictates the sheriff would therefore be responsible for those medical expenses.
¶ 25 There is an exception to the responsibility of the sheriff to pay for medical care. In a statute passed in 1991, the Legislature has made the inmate himself ultimately responsible for the cost of medical care in some situations. Title 19 O.S.Supp. 1998, § 746[19-746] provides that "[a]n inmate receiving medical care for a preexisting condition or a condition not caused by the acts or omissions of the county shall be liable for payment of the cost of care, including but not limited to, medication, medical treatment, and transportation costs, for or relating to the condition requiring treatment." This, of course, would not relieve the sheriff of his constitutional duty in the first instance to assure that the prisoner's medical needs were addressed. Revere, 463 U.S. 239. However, it could allow the sheriff to seek reimbursement from the prisoner in a civil action.
¶ 26 Whether the inmate in this instance suffered from a pre-existing condition, thus making him personally liable for his own medical expenses, is a question of fact which cannot be answered in an Attorney General Opinion. 74 O.S. Supp. 1998, §18b[74-18b](5).
¶ 27 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Under 57 O.S. 1991, § 52[57-52], the county sheriff bearsfiscal responsibility for medical services incurred by a prisonertransported from out of state to testify in a criminalproceeding, pursuant to the prosecutor's request under theUniform Act to Secure the Attendance of Witnesses From Without aState in Criminal Procedures, 22 O.S. 1991 and Supp. 1998, §§721-727.
 2. If the inmate was hospitalized as a result of apre-existing medical condition, 19 O.S. Supp. 1998, § 746[19-746]dictates that the inmate himself would be responsible for hisown medical expenses. However, this does not relieve the sheriffof his duty to provide prompt medical attention. Whether such asituation exists in this case is a question of fact which cannotbe answered in an Attorney General's Opinion. 74 O.S. Supp.1998, § 18b(5).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DAN CONNALLY ASSISTANT ATTORNEY GENERAL
[1] Information provided this office indicated the prisoner's attendance was sought pursuant to the Oklahoma Uniform Act to Secure Rendition of Prisoners in Criminal Proceedings, 22 O.S.1991, §§ 728-737[22-728-737], which specifically allows a requesting state to obtain a prisoner housed in another state to testify in a criminal proceeding in the requesting state. However, Missouri has not adopted that Uniform Act; moreover, a review of the court record reveals the Uniform Act discussed in the body of this text was the act under which the prisoner was brought to Oklahoma.
[2] The discussion concerning use of the court fund and definition of "expenses," discussed above, would be dispositive of the argument that treatment of a prisoner-witness is a lawful "expense."