LEWIS ROCKWOOD AND LEWIS A. ROCKWOOD v. ESTATE OF H. C. ST. JOHN.

(Filed Sept. 5, 1900.)

HOMESTEAD—*Abandonment—Minor Heirs— Sale to Pay Decedent's Debt.* Where a husband, the wife being dead, owned and occupied a tract of real estate as a homestead with his two minor children at the time of his death, and immediately after his death the said minor children were removed from said land, and a guardian was appointed for the minor children, who in that capacity has been leasing the land and collecting the rents therefrom, but has not occupied the same, nor have any of said minor children occupied said land, as a residence, since the death of their father; *Held,* that such removal of the minor heirs from the land, does not constitute a waiver or abandonment of the homestead and further *held,* that personal "possession and occupancy" of the land by either the minor heirs or their guardian was not necessary, that "possession and occupancy" by a tenant of the guardian is sufficient to preserve the homestead character of the land for the minor heirs; and that said land could not be subjected to the payment of the debt of the plaintiffs herein, created prior to the death of the father.

(Syllabus by the Court.)

*Appeal from the District Court of Oklahoma County; before John H. Burford, District Judge.*

*Howard & Ames,* for plaintiffs in error.

*J. S. Jenkins* and *J. L. Brown,* for defendant in error.

## STATEMENT OF THE CASE.

It appears from the record that H. C. St. John owned a tract of land consisting of about twenty-seven acres near Oklahoma City, upon which he resided with his two minor children at the time of his death, and that St. John at the time of his death left no surviving wife. On the day of his death the two small children were removed to a boarding house in Oklahoma City. The youngest child was at that time about three years old and the older five years old. A short time after the death of St. John, one J. Stafford adopted the youngest child, and the other child was sent to relatives in the state of Illinois. Stafford was then duly appointed guardian of both of the minor children. It further appears from the record that since the death of St. John, the duly appointed guardian of the estate of the minor heirs has leased said land, and has been collecting the rent therefrom, but has not occupied the same, nor have any of the children occupied the same as a residence since the death of St. John.

It appears from the record that St. John was indebted to the plaintiffs in error on an account for moneys advanced to him to be used for employing certain attorneys in Washington, D. C. This claim was duly filed by the plaintiffs in error with the administrator, and it was allowed by the probate court. The plaintiffs in error then applied to the probate court for an order for the sale

of said land, and the application of the proceeds thereof to the payment of their debt. The application was denied by the probate court, on the ground that said land should be set aside for the use and benefit of said minor children as their homestead, and that the said land was not liable for the payment of said indebtedness. The plaintiffs then appealed from the probate court to the district court, where the cause was tried by the court without a jury upon the following agreed statement of facts:

"It is hereby agreed by and between the parties hereto that H. C. St. John was the owner of a certain tract of real estate near Oklahoma City, described in the transcript in case No. 2093, in this court; that said St. John was the father of two minor children by a divorced wife, who were and for many years had been residing with their mother at Olney, in the state of Illinois; that he was also the father of two minor children, who, at the time of his death were residing with him upon the land above described, which they were occupying as a homestead; that afterwards and upon the same day of the death of said H. C. St. John, said minor children were removed and one of them taken to live at Olney, in the state of Illinois; that the other of said minor child was adopted by J. Stafford, who became its guardian, and who had a homestead and residence of his own in Oklahoma City, to which place he took said child to reside; that after the death of said St. John and the removal of said children, said land was not occupied as a residence by any member of the family of said St. John; that he was a widower at the time of his death; that at the time of his death he was indebted to Lewis Rockwood in the sum claimed in this action; that the question presented to the court for determination is whether said land is exempt or may be sold and the proceeds applied to the payment of the debts of said H. C. St. John; that said J. Stafford was the appointed guardian of the estate of said minor children, and in that capacity has been rent-

ing said land and collecting the rents therefrom, but has not occupied the same, nor have any of said children occupied, as a residence, said land since the death of said St. John; that the transcript in said case No. 2093, in so far as the facts therein recited are not contradictory to the facts above stated, shall be considered in evidence in this case."

Upon this agreed statement of facts the district court found, "that the land in controversy was the homestead of the said H. C. St. John at the time of his death, and that he left minor heirs as set forth in the pleadings and stipulation, and that said St. John at the time of his death left no surviving wife." Thereupon the court ordered that the said homestead be turned over to the guardian of said minor children as their absolute property, free from all incumbrances, to be occupied and possessed by said minor children in accordance with the law. The plaintiffs then sought to obtain a new trial on the following ground: "That the court erred in holding and finding that the land and premises in controversy in said action was and is exempt from application to the payment of the debt of the plaintiffs, in that the same is a homestead and exempt under the laws of said Territory as such to the minor children of said H. C. St. John, deceased, without being occupied or used by them, or any of them, as such homestead." The motion for a new trial was overruled by the court and exception reserved. From the overruling of this motion and judgment of the court the plaintiffs bring the case here for review.

Opinion of the court by

HAINER, J.: The sole question presented in this case is whether the land in controversy can be sold and applied to the payment of the debt due the plaintiffs in error.

To determine this question it will be necessary to take into consideration the following provisions of our statutes relating to decedents.

Section 1300, of the Statutes of 1893, provides as follows:

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age. And in addition thereto the following personal property must be immediately delivered by the executor or administrator to such surviving wife or husband, and child or children, and is not to be deemed assets, namely: First. All family pictures. Second. A pew or any other sitting in any house of worship. Third. A lot or lots in any burial ground. Fourth. The family bible and all schoolbooks used by the family, and all other books used as part of the family library, not exceeding in value one hundred dollars. Fifth. All wearing apparel and clothing of the decedent and his family. Sixth. The provisions for the family necessary for one year's supply, either provided or growing, or both; and fuel necessary for one year. Seventh. All household and kitchen furniture, including stoves, beds, bedsteads and bedding, not exceeding one hundred and fifty dollars in value.

"The executor or administrator must make a separate and distinct inventory of all the personal property specified in this section, by articles, and opposite each article give the appraised value of the same, in dollars and cents, as given in the general inventory of the appraisers appointed by the court, and return the same to the probate court, and no such property shall be liable for any prior debts or claims whatever."

Section 1301, is as follows:

"In addition to the property mentioned in the preced-
ing section, there shall also be allowed and set apart to
the surviving wife or husband, or the minor child or chil-
dren of the decedent, all such personal property or money
as is exempt by law from levy and sale or other final proc-
ess from any court, to be, with the homestead, pos-
sessed and used by them; and the executor or adminis-
trator must make and return a separate and distinct in-
ventory thereof in the same manner as required for the
property mentioned in the preceding section, and no such
property shall be liable for any prior  debts  or  claims
against the decedent, except when there are no assets
thereunto available for the payment of the necessary ex-
penses of his last illness, funeral charges and expenses of
administration."

Section 1302, reads as follows:

"If no homestead has  been  selected,  marked  out,
platted and recorded, as provided by the homestead law,
the judge of the probate court must cause the same to be
done according to the provisions of said law."

Section 1303, provides as follows:

"The homestead is not subject to the payment of any
debt or liability contracted by or existing against the hus-
band and wife, or either of them, previous to, or at the
time of death of such husband or wife, except as provided
in the law relating to homesteads."

The exception referred to in sec. 1303, relating to home-
steads is contained in sec. 2847, which reads as follows:

"The exemption of the homestead provided for in this
act shall not apply where the debt is due:  First. For the
purchase money of such homestead or a part of such pur-
chase money.  Second.  For taxes due thereon.  Third.
For work and material used in constructing improvements
thereon, or for mortgaged indebtedness; but in this last
case such work or material or mortgaged indebtedness
must have been contracted for in writing, and the con-
sent of the wife, if there be one, must have been given

in the same manner as is by law required in making a sale and conveyance of the homestead."

By the stipulation filed it is agreed by the parties to this action: First. That the land in controversy was the homestead of St. John, and that he and his two minor children were occupying the same at the time of his demise. , Second. That immediately upon his death the two minor children were removed from the land and have not since resided on or occupied the same. Third. That Stafford is the duly appointed guardian of the estate of said minor children, and in that capacity has been renting said land and collecting the rents therefrom. Fourth. That neither the guardian nor the said minor children have personally occupied or resided upon said land since the death of St. John. Fifth. That at the time of the death of St. John he was indebted to the plaintiffs in error in the sum claimed in this action.

Thus, it will be seen that there is no dispute upon the subject that the land in controversy was the homestead of St. John, and that he was occupying the same as a homestead with his two minor children at the time of his death. It is also conceded in the argument of counsel for plaintiffs in error that if the two minor children had continued to possess and occupy the land in controversy it could not be sold and applied to the payment of the debt of the plaintiffs. But, it is contended, that since the two minor children have been removed from said land, and no longer continue to possess and occupy the same, they have forfeited their right to claim it as a homestead, and it is therefore subject to the payment of the debts of the plaintiffs in error. It will be observed that the language of the statute is that: "Upon the death of the hus-

band and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age." This case then turns on the construction to be given to the words "continue to possess and occupy." We do not think that it is the spirit or intent of the statute to require continuous personal possession and occupancy of the land by the minor heirs in order to preserve the homestead character of the land. We think continuous possession and occupancy by a tenant of the duly appointed guardian is a sufficient compliance with the provision of the statute to preserve the homestead character to the orphans.

In this case it appears from the agreed statement of facts that the duly appointed guardian leased the land, collected the rents and applied the proceeds thereof to the support of the minor children. The right to the homestead by the minor children is not dependent upon the actual "possession and occupancy" of the land by them. They can neither waive or abandon their right to the homestead. Their right depends upon their minority which cannot be forfeited or taken away. It is the duty of the guardian to "possess and occupy" the land either as such guardian or by a tenant, and by so doing all the rights of the minor heirs are preserved. It indeed would be a very harsh and in our judgment a very unjust interpretation to be placed upon the statute, to hold that because these dependent and orphan children do not "possess and occupy" the land personally that they thereby forfeit their homestead right, and that a creditor who claims a debt due him from the decedent for moneys advanced for the employment of an attorney prior to the death of the decedent, can subject said land of the minor

children to the application of the payment of such debt. We do not think that such is the law, and cannot assent to any such construction of the statute. And this contention of ours is sustained by an almost unbroken current of authorities.

In Thompson's excellent work on "Homesteads and Exemptions," sec. 242, the author uses the following language:

"This rule, however, does not apply strictly, in all cases, where the claim is made, by the widow or minor children surviving the owner of the property occupied by the owner as a homestead at the time of his death. Although it is necessary that there should have been sufficient occupancy of the premises by the husband or father, prior to his decease, to impress them with the homestead character, and the object of the law is to preserve the rights of the survivors to the property, in order that they may occupy it, the courts are much more liberal in construing the provisions of the statute having reference to the occupancy by the widow or surviving minor children."

In *Shirack v. Shirack*, 24 Pac. 1107, Mr. Justice Johnston, speaking for the supreme court of Kansas in this case said:

"From the facts presented there can be no question that the land was impressed with the homestead character during Pettit's life time, as there was actual personal occupancy by himself and infant child up to the time of his death. Does the fact that the infant was removed to the home of a neighbor for a period of about two years before the action of foreclosure was begun prejudice its statutory right of exemption, and divest the land of its homestead character? The infant was only about eighteen months old at the death of its father, and, it being the only remaining member of the family, an uninterrupted and continuous personal occupancy may have been impracticable. Although the little one was removed to

the home of a neighbor, there is no statement in the agreed facts that it was either the purpose of the guardian or the child (if it can be said to have an intention) to make that place its permanent home, or to abandon the Pettit property as a homestead."

In *Vandiver v. Vandiver*, 20 Kan. 501, it was said by Mr. Chief Justice Horton, speaking for the court:

"We are not called upon now to determine the nature of the occupancy after the death of a debtor, to exempt the homestead from the payment of his debts; but certainly the requirement of "occupancy" should be liberally construed, so as to favor the beneficial purposes of these sections of the law."

It is a well settled rule that exemption laws of all kinds are to be liberally construed in favor of the purpose for which they were enacted. (*Mallory v. Berry*, 16 Kan. 295; *Rasure v. Hart*, 18 Kan. 340; *Donmyer v. Donmyer*, 43 Kan. 444, 23 Pac. 627; *Bank v. Warner*, 22 Kan. 537.)

In *Deering v. Beard*, 48 Kan. 16, the supreme court of that state said:

"Where a minor child of the intestate continues to cultivate the homestead after the father's death, but does not actually occupy the premises continuously, but resides with his mother until her marriage, and then lives with her husband, but continues to farm the homestead, he does not thereby forfeit his rights, as such minor, to the homestead interest in the property, and his interest cannot be sold for his father's debts."

In *Phipps v. Acton*, 12 Bush. 377, it was said:

"That the widow's temporary absence from the premises after having rented them out and placed her tenant in possession thereof is not such an abandonment as will forfeit her claims to the homestead under the statute, for she may be said to be in possession by her tenant; and so long as she is in the occupancy or control of the premises, by herself, her agent or tenant, her right to the

homestead will continue; and so far as her right to the concerned, his right to the homestead does not depend upon his occupancy, but upon his minority; nor can he be deprived of such right, either by his mother's abandonment of the homestead, or his own failure to occupy the same."

The supreme court of Arkansas, in construing a statute providing that "The homestead shall be exempt from sale on execution during the time it shall be occupied by the widow, child or children," held in *Booth v. Goodwin*, 29 Ark. 623, "That minor children, both parents being dead, are incapable, either by act or declaration, of waiving or abandoning the homestead right. Actual occupancy by them is not necessary. It is the duty of the guardian to take possession of the homestead, and lease or rent it for their benefit, and this is the possession and occupancy contemplated by the statute."

The supreme court of Illinois, in construing a statute which provided that, "Such exemption shall continue after the death of such householder, for the benefit of the widow and family, some, or one, of them continuing to occupy such homestead until the youngest child shall become twenty-one years of age, and until the death of such widow," in *Brinkerhoff v. Everett*, 38 Ill. 263, where both parents were dead and the minor children were taken from the homestead by their guardian and placed in the homes of their kindred, and the premises were leased by the guardian for the benefit of the children, they having no other means of support; *held*, that such a removal did not forfeit the homestead right of the minors; and the fact that the property was rented by the guardian for their benefit did not constitute an abandonment.

After a careful examination and review of the authorities upon this subject our conclusion is that "possession and occupancy" by a tenant of the duly appointed guardian is sufficient compliance with the statute to preserve the homestead character of the land for the minor heirs; that actual "possession and occupancy" either by the minor heirs or their guardian, is not necessary, and that they cannot either by act or declaration waive or abandon their right to the homestead. We therefore, hold that the land in controversy is not subject to the payment of the debt of the plaintiffs in error.

The judgment of the district court of Oklahoma county was right, and it is therefore affirmed at the cost of the appellants.

Irwin, J., concurring; Burford, C. J., having tried the cause in the court below, not sitting; Burwell, J., having been one of the administrators of the estate of St. John, did not participate in this decision; McAtee, J., not sitting.