In the Matter of the ESTATE OF Virgil R. WALLACE.

Lois Boone WALLACE, Surviving Spouse, Appellant,

v.

Jimmy R. WALLACE, Executor of the Estate of Virgil R. Wallace, Deceased, Appellee.

No. 55835.

Supreme Court of Oklahoma.

July 13, 1982.

Lewis M. Watson, Ada, for appellant.

Don S. Bushong, Shawnee, for appellee.

SIMMS, Justice:

Lois Wallace, surviving wife of Virgil Wallace, brings this appeal from the trial court's denial of her petition to set apart his homestead property, real and personal, to her as her probate homestead.

The trial court's holding adverse to her was based on its finding that she had abandoned the homestead prior to Mr. Wallace's death. The trial court held the property was therefore subject to sale as sought by the executor.

The Court of Appeals, Division I, reversed the trial court. Certiorari has previously been granted. We vacate the decision of the Court of Appeals and affirm the trial court.[1]

The undisputed facts are these. Lois and Virgil Wallace married in 1970. She moved in with Virgil at his home of approximately 160 acres at Asher. She kept her home consisting of a 60 acre tract near Ada and did not file for homestead exemption on it after her marriage. In 1972 Virgil filed a petition for divorce but the petition was dismissed by agreement of the parties.

The parties lived together on Virgil's farm until December, 1975, when Lois moved back to her home in Ada. She immediately filed to reclaim homestead exemption on that home and did so continuously thereafter.

Virgil remained at his home and continued filing for homestead exemption on it in his name alone.

Virgil died in February of 1980. His will was admitted to probate and Jimmy Wallace, one of his three children by a previous marriage, was appointed Executor.

Testimony was conflicting as to the frequency of Lois' visits with Virgil between 1975 and 1980.

She testified that she and Virgil were not "separated", that she only moved to her place in Ada to maintain her livestock and

---

1. A separate issue of requiring the Executor to post bond was originally part of the appeal. It was decided adverse to the Executor by the Court of Appeals. That issued was not raised in the Petition for Rehearing in the Court of Appeals and has been abandoned.

her property. She testified that they saw each other frequently; that weather permitting, she would go see Virgil on weekends and he would come to Ada during the week. When asked why she was claiming a homestead in Ada and claiming a homestead right in the Asher property, she replied that she had "two of them." The essence of the testimony by Virgil's children was that after 1975, Lois and Virgil saw each other only very rarely.

Appellant's argument is two pronged: first, that our statute, 58 O.S.1971, § 311, does not authorize consideration of abandonment prior to the death of a spouse as a ground for forfeiture, and the property therefore had to be set apart to her as the surviving spouse; and second, that even if it were authorized under our statute, the evidence in this case does not support a finding of abandonment.

The probate homestead originates by force of statute, § 311, supra, provides:

"Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead, which shall not in any event be subject to administration proceedings, except as in this title provided, until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age. The title to the land set apart for the homestead property shall pass, subject to the right of homestead, the same as other property of the decedent and shall be included in the decree of distribution. And in addition thereto, the following property must be immediately delivered by the executor or administrator to such surviving wife or husband, and child or children, and is not to be deemed assets, namely:

"1. All family pictures.
2. A pew or other sitting in any house of worship.
3. A lot or lots in any burial ground.
4. The family Bible and all school books used by the family, and all other books used as part of the family library, not exceeding in value of One Hundred ($100.00) Dollars.
5. All wearing apparel and clothing of the decedent and his family.
6. The provisions for the family necessary for one year's supply, either provided or growing, or both; and fuel necessary for one year.
7. All household and kitchen furniture, including stove's, beds, bedsteads and bedding.
No such property shall be liable for any prior debts or claims whatever."

The precise factual question of whether rights to the probate homestead may be lost by abandonment prior to the death of a spouse, has apparently never been before us. Neither party has found a decision directly on point and our independent research did not reveal one.

We do, however, have numerous decisions pertaining to the legal principles involved which are clearly determinative of the issue. While it is unnecessary to go into an extended discussion of the law of homestead and homestead rights, a brief review of some pertinent points will be beneficial.

The constitutional homestead provisions are set forth in art. 12, sections 1, 2 and 3. Vitalizing those provisions are the statutory enactments at 31 O.S.1971, §§ 1–5.

■ Being a creature of the constitution and statutes, the homestead right is hence extended or limited by the provisions creating it. *Karbs v. Bouse*, 195 Okl. 23, 154 P.2d 968 (1945).

■ "Homestead" has both a legal and popular meaning which is identical; the residence of the family, the place where the home is. *Preston v. Ottawa County Nat. Bank*, 138 Okl. 133, 280 P. 581 (1929).

■ The homestead interest vests jointly in the husband and wife for the benefit of themselves and the family regardless of which of them is vested with title. The spirit and purpose of the constitutional homestead exemption is to protect the entire family in its occupancy from improvidence and the urgent demands of

creditors. *Pettis v. Johnson*, 78 Okl. 277, 190 P. 681 (1920); *Hensley v. Fletcher*, 172 Okl. 19, 44 P.2d 63 (1935). A person cannot have two homesteads at the same time, and a removal from one that gains a new homestead is an abandonment of the old. *Preston v. Ottawa County Nat. Bank, supra.* The constitutional homestead exemption is a personal right which may be waived or abandoned. *Goolsby v. Cheatham*, 178 Okl. 113, 61 P.2d 1073 (1936).

■ Once property is impressed with a homestead character, it continues to be the homestead until the owner voluntarily changes its character, by disposing of it or by abandoning it as a homestead. *Marathon Oil Co. v. Western Oil & Drilling Co.*, 185 Okl. 53, 89 P.2d 939 (1939).

■ Upon the death of a spouse, the surviving spouse and/or minor children are given by § 311, supra, the right to "continue to possess and occupy the whole homestead."

The "whole homestead" is that property of the family which was impressed with constitutional homestead character at the time of the death. *In re Gardner's Estate*, 122 Okl. 26, 250 P. 490 (1926).

■ The survivor's right to continued possession and occupation of the property regardless of where title is lodged, is a personal and individual right. It is a special right to continue to possess and occupy the homestead during the lifetime of the survivor. It is not an interest in the testator's property, it is not subject to testamentary disposition, and it is distinct from the interest a surviving spouse takes in the land by inheritance or devise. *Bacus v. Burns*, 48 Okl. 285, 149 P. 1115 (1915); *Kemp v. Turnbull*, 198 Okl. 27, 174 P.2d 384 (1946); *Thompson v. Marlin*, 116 Okl. 159, 243 P. 950 (1926). It is an interest distinct from title and does not affect title to the property. *Holmes v. Holmes*, 27 Okl. 140, 111 P. 220 (1910).

■ Once the probate homestead attaches, the right of the survivor to occupy the homestead is superior to the rights of coheirs to their property interest, and their

interest is suspended until the probate homestead is terminated. That termination may occur in one of several ways. Being a personal and individual right, it may be waived, forfeited or abandoned, or lost by death if there are no minor children. *In re Gardner's Estate*, supra; *In re Carother's Estate*, 196 Okl. 640, 167 P.2d 899 (1946); *In re Irwin's Estate*, 192 Okl. 334, 136 P.2d 940 (1943); *Mathews v. Sniggs*, 75 Okl. 108, 182 P. 703 (1919).

■ The policy considerations served by the constitutional homestead are distinct from those of the probate homestead. The constitutional homestead is intended to protect the family from creditors only. The probate homestead gives the surviving spouse (and/or child) a special, individual right of lifetime occupation which is intended to protect the survivor against all persons (except holders of certain enforceable liens). Unless voluntarily waived or abandoned, it stands between the survivor and all the world. *In re Gardner's Estate*, supra; *In re Carother's Estate*, supra.

How then does the probate homestead attach? Our statute expressly requires more than a marriage or parental relationship: it requires occupation. The individual right granted is one to "CONTINUE to POSSESS and OCCUPY" the homestead. The statute assumes occupation by the surviving spouse at the time of death, and it is the intention to continue the occupation that causes the probate homestead to attach.

■ Our statute requires that two contingencies occur in order to vest a probate homestead:

(1) a survivor with the statutory family status: spouse or minor child; and

(2) an existing occupation of the premises which the survivor intends to continue. See, *In re Cole's Estate*, 85 Okl. 69, 205 P. 172 (1922).

■ Occupation alone is not sufficient if the requisite status is not fulfilled. See: *Union Trust Co. v. Cox*, 55 Okl. 68, 155 P. 206 (1916), (two sisters are a family to qual-

ify for purpose of constitutional homestead but the right to continued occupancy of probate homestead does not extend to survivor); *Manning v. Dosher,* 167 Okl. 368, 29 P.2d 966 (1934), (grandchild cannot claim probate homestead); *In re Jones' Estate,* 195 Okl. 168, 155 P.2d 980 (1945), (supposed wife whose marriage was invalid not entitled to probate homestead).

▉ Likewise, the existence of the requisite status alone is not sufficient if there is no occupation of the premises. In *Holmes v. Holmes,* supra, 111 P. at 234, we adopted the rule, consistently followed, that where the decedent leaves a widow and dies "seised in fee of land *occupied and used by himself and family* at the time of his death, his surviving widow is entitled as against his heirs or devisees to occupy and possess the whole of such homestead as long as she preserves the homestead character by maintaining a home thereon." (Emphasis added)

In *In re Carother's Estate,* supra, 167 P.2d at 903, the Court recognized that for the probate homestead "occupancy by the surviving spouse and family or by the surviving spouse alone, if there are no children, is the only requirement." The Court there noted, after discussing a number of previous decisions, that "it plainly appears that once the probate homestead has attached by the continued occupancy of the constitutional homestead by the surviving spouse, . . . it cannot be taken from such spouse . . . . except for the obligations specified in . . . the constitution." See also, e.g., *Kemp v. Turnbull,* supra, 174 P.2d at 387; *Powell v. Powell,* 189 Okl. 241, 116 P.2d 889 (1941); *In re Cole's Estate,* supra.

We have distinguished the requirement of actual possession and occupancy for minor children from that of surviving spouses. In *Rockwood v. St. John's Estate,* 10 Okl. 476, 62 P. 277, 279, the Court held that the removal of the minor children from the land did not constitute a waiver or abandonment of the homestead, and further held that personal possession and occupation by the minors was not necessary to preserve the homestead character of the land, stating:

"This case then turns on the construction to be given to the words, 'continue to possess and occupy.' We do not think that it is the spirit or intent of the statute to require continuous personal possession and occupancy of the land by the minor heirs in order to continue to preserve the homestead character of the land. We think continuous possession and occupancy by a tenant of the duly-appointed guardian is a sufficient compliance with the provisions of the statute to preserve the homestead character to the orphans. * * * The right to the homestead by the minor children is not dependent upon the actual 'possession and occupancy' of the land by them. They can neither waive nor abandon their right to the homestead. Their right depends upon their minority, which cannot be forfeited or taken away."

See, also, *Hembree v. Magnolia Petroleum Co.,* 176 Okl. 524, 56 P.2d 851 (1936).

Following *Rockwood,* the Court in *Yost v. Cassel,* 208 Okl. 330, 255 P.2d 914, 916 (1953), noted that when a spouse survives, his or her rights to possess the homestead are created by the same statute and are protected to the same extent as rights of minors. The "material difference" being, however, that the spouse, an adult, "may abandon or forfeit the rights much more easily."

▉ As previously recognized by this Court, § 311, by its express provisions, requires an existing and continuing occupation of the homestead. The statute declares, and our cases hold, that the probate homestead is a right of *continued* occupation. Forfeiture of the probate homestead by reason of abandonment prior to the death of a spouse is clearly within the contemplation of our statute. Under § 311, with such an abandonment, the right never attaches.

▉ Appellant's argument approaches the homestead laws as if they were statutes of succession, but they are not. They are statutes of exemption. While exemption laws, such as homestead laws, should be

liberally construed to comport with their beneficient spirit of protecting the family home, a liberal construction cannot be the means of defeating a positive law or a rule established by judicial precedent. *In re Wineland*, 3 F.Supp. 796 (D.C.Okl.1933); *Rockwood v. St. Johns*, supra; *Preston v. Ottawa County Nat. Bank*, supra. The legislature has expressly declared occupation a condition required for the homestead to vest. We are not at liberty to ignore that condition.

Our holding is also in keeping with the policy intended to be served by the probate homestead. It does not serve the policy of protecting families in the right of continued occupancy of their homes, to grant that right to a survivor who previously abandoned the homestead and does not live in the home. Additionally, an opposite holding would effect strange and perhaps perverse results, for a spouse may lose rights to a constitutional homestead by abandonment. 16 O.S.1971, § 6. See, *Gomes v. Davis*, 197 Okl. 126, 169 P.2d 200 (1946).

This precise question was decided many years ago by the Supreme Court of Nebraska in *Dickman v. Birkhauser*, 16 Neb. 686, 21 N.W. 396, 397 (1884). There the wife left her husband several years before his death, moved a few miles away, and purchased land in her name upon which she built a house which was her home. The parties were never divorced. In denying her petition for homestead rights, the court stated:

"The identity of the wife's domicile with that of the husband is merely a legal fiction, based upon the supposed suspension of the legal existence of the wife during marriage. For many purposes, in this country, at least, she may acquire a domicile distinct from that of her husband; * * * The question of the actual domicile of the wife in actions * * * where she seeks to assert her individual rights against her husband or his estate, is one of fact and not of law. In such cases she is asserting her own rights, and must show that she is entitled to the relief prayed for. In this case she abandoned her husband years before his death, and purchased and paid for a home of her own. There was an actual and continued abandonment on her part, and the home of her husband, by her own voluntary action, ceased to be her home. A homestead, in law, means a home place, or place of the home, and is designed as a shelter of the homestead roof, and not as a mere investment in real estate, or the rents and profits derived therefrom * * * In other words, it is the actual home or domicile of the party. There is no claim that the defendant's home was at the residence of her husband at the time of his death. She had for years prior to that event abandoned that home and taken possession of another, purchased with her own money. The latter, therefore, was her homestead, and not that of her husband."

Whether a homestead has been abandoned is a question of fact, ascertainable from circumstances of the particular transaction and abandonment must be shown by clear and convincing evidence. Intent, being subjective, is established by many factors, including declarations, actions, and surroundings accompanying their absence. *Kunauntubbee v. Greer*, Okl., 323 P.2d 725 (1958). *Hixson v. Cook*, Okl., 379 P.2d 677 (1963).

In the instant case there was proof presented which would fully warrant the trial court in finding Lois Wallace had abandoned the homestead. The trial court was able to observe the demeanor of the witnesses, their interest and who was worthy of belief.

Under these facts and circumstances we cannot say the judgment was against the clear weight of the evidence.

The judgment of the trial court is Affirmed.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, DOOLIN, HARGRAVE and OPALA, JJ., concur.

WILSON, J., concurs in result.