In the Matter of the ESTATE OF Robert D. WALLING, a/k/a R.D. Walling, Deceased.

Verna L. WALLING, Appellee,

v.

Blanca WALLING, Appellant.

No. 83938.

Court of Appeals of Oklahoma, Division 3.

Sept. 12, 1995.

Certiorari Denied Jan. 18, 1996.

Arnold D. Fagin, R. Amanda McInnis–Nixon, Oklahoma City, for Appellant.

Mary Johnson Tidholm, Oklahoma City, for Appellee.

## OPINION

HANSEN, Judge:

On July 5, 1984, Appellee, Verna L. Walling (Verna), and Robert David Walling (Robert) were divorced. The divorce decree, recorded July 5, 1984, with the Stephens County Clerk granted Robert title to the real estate in Velma, Oklahoma, (the property) subject to Verna's lien to secure payment of support alimony.

On July 30, 1984, Verna delivered to Robert a quit claim deed to the property. On January 24, 1986, Robert married Appellant, Blanca Walling (Blanca). On August 16, 1989, Robert delivered to Blanca a quit claim deed to the property.

On September 19, 1989, Verna re-recorded the divorce decree with the Stephens County Clerk. On February 27, 1990, Verna and Robert executed an Agreed Order Modifying the Decree of Divorce in which the support alimony was reduced from $3,000 per month to $1,000 per month for a certain time period. In the agreed order, the trial court ordered that Verna "shall retain the lien awarded in the Property Settlement Agreement. . . ."

On October 3, 1992, Robert died. On March 22, 1993, Verna filed a suit on a rejected creditor's claim against the Personal Representative of the Estate of Robert David Walling, Sr. Blanca was added as a third party defendant for the purpose of determining, among other things, her right, title and interest in the property.

On April 6, 1994, the trial court granted summary judgment to Verna for $55,000 of unpaid, accrued support alimony and $4,127 for funeral expenses that had been paid by a life insurance policy which named her as the beneficiary.

On April 7, 1994, Verna filed a motion for immediate partial distribution of $59,127 from Robert's estate. Verna argued she had an enforceable lien on Blanca's homestead to secure her unpaid, accrued support alimony.

On May 26, 1994, the trial court ordered payment to Verna in monthly installments to satisfy her judgment for unpaid alimony. The trial court took the lien issue under advisement. On July 28, 1994, it found and ordered, as follows:

3. That the Decree of Divorce originally entered herein on July 5, 1984, which incorporated the Property Settlement Agreement, granted a money judgment to the Plaintiff, Verna Walling, for alimony for support and granted to her a lien against the real property, including the Velma property, for the enforcement of the same. Said lien was perfected on July 12, 1984 when said Decree of Divorce was recorded with the County Clerk for Stephens County, Oklahoma and therefore said lien rights are superior to any interest or claim of Blanca Walling.

Blanca appeals.

▪ For her first proposition of error, Blanca argues that pursuant to 12 O.S.1991 § 735, Verna's judgment lien is dormant and therefore unenforceable.[1] In *Record v. Record*, 816 P.2d 1139 (Okla.1991), the Supreme Court noted that ". . . a court may order periodic alimony payments as and for a division of property, or may, in a proper case, enter a judgment for the entire amount due and payable at once. . . . We have long held however, that where periodic payments are ordered, they are not owing and enforceable until they are each due. The right to enforce a periodic payment of 'alimony or support . . . accrues on each payment as it matures and the statute of limitations begins to run on each installment from the time fixed for its payment.'"

Herein, it is not disputed that until the time of his death, Robert had paid Verna the support alimony payments as agreed upon and as ordered by the trial court. Pursuant to the *Record* case, Robert's support alimony

---

1. 12 O.S.1991 § 735 provides, in part:

   If execution is not issued and filed as provided in Section 759 of this title or a garnishment summons is not issued by the county clerk within five (5) years after the date of any judgment that now is or may hereafter be rendered in any court of record in this state, or if five (5) years has intervened between the date that the last execu-

   tion on such judgment was filed or the date that the last garnishment summons was issued as provided by Section 759 of this title, . . . such judgment shall become unenforceable and of no effect, and shall cease to operate as a lien on the real estate of the judgment debtor. Provided, that this section shall not apply to judgments against municipalities.

payments to Verna were not owing and enforceable until they were due. Therefore, Verna could not have commenced formal execution on a judgment where Robert was at not time in default. Verna's judgment lien is not dormant.

■ Blanca further contends when Verna quit claimed her interest in the property to Robert, pursuant to the property division in the decree, she released the lien created by the decree. She relies on dicta found in *Grattan v. Tillman*, 323 P.2d 982 (Okla.1957). That decision deals with a decree that clearly awarded property to the husband "free and clear of any claim or right of plaintiff." Further the decree in *Grattan* did not impose a lien on the property. In *Grattan*, the wife sought to impress the property with a judgment lien for alimony awarded to her in the divorce decree. The Supreme Court affirmed the trial court's refusal to impose such a lien. *Grattan*,'s holding does not support Blanca's argument that once a divorcing party executes a quit claim deed pursuant to a property division, that a lien specifically provided for in the decree, is eliminated.

■ Blanca also argues that when Verna re-recorded the decree on September 19, 1989, the decree could not constitute a lien on the property because title was no longer held by Robert inasmuch as he conveyed the property to Blanca on August 16, 1989.[2] We disagree. When Robert conveyed the property to Blanca, the property already was encumbered by the judgment lien. Blanca took title to the property subject to the judgment lien.[3] *Core v. Nave*, 773 P.2d 767 (Okla.App.1989). *See also Cimarron Federal Savings Assoc. v. Jones*, 832 P.2d 426 (Okla. 1991), *cert. granted and Court of Appeals opinion adopted*, 832 P.2d 420 (Okla.1992) (overruling *Core v. Nave* on other grounds).

■ Next, Blanca contends the trial court ruled contrary to the laws protecting a widow's homestead when it determined Verna had an enforceable lien against Blanca's homestead for alimony due from Robert. Blanca points out that the probate homestead was enacted (58 O.S.1991 § 311) to give a surviving spouse a special and individual right of occupation protected from all persons. *In the Matter of the Estate of Wallace*, 648 P.2d 828 (Okla.1982). She further points out that once the probate homestead attaches it cannot be taken from the spouse except for obligations specified in the Oklahoma Constitution. The obligations are (1) for the purchase money of the homestead, (2) the taxes due on the homestead and (3) for work and material used in constructing improvements on the homestead. Okla. Const. art. 12 § 2.

However, the trial court did not determine whether Verna's judgment lien was subject to immediate foreclosure, nor has Verna attempted an execution of the judgment lien. That issue is not before this Court.[4]

Judgment of the trial court AFFIRMED.

HUNTER, P.J. concurs.

ADAMS, Judge. dissenting:

The majority concludes that *Grattan v. Tillman*, 323 P.2d 982 (Okla.1957) does not

---

2. The record reflects Robert conveyed the property to Blanca by quit claim deed. On February 16, 1994, the Personal Representative of Robert's estate filed a petition to set aside the quit claim deed from Robert to Blanca. The July 28, 1994 Order Allowing First Annual Accounting of Personal Representative lists the property as part of Robert's estate.

3. Blanca claims that when Verna and Robert executed the Agreed Order on February 27, 1990, Verna's judgment lien was void because Blanca did not sign the order. However, the Agreed Order merely retained the judgment lien which already encumbered the property. Moreover, even though the property became Blanca's homestead, any of Blanca's homestead rights attached after the property was already encumbered by the judgment lien. *See Core v. Nave*, 773 P.2d 767 (Okla.App.1989). Thus, Blanca's

signature on the Agreed Order was not necessary, and the absence of it on the order did not render the judgment lien void.

4. Because the trial court did not determine whether Verna's judgment lien was enforceable against Blanca's probate homestead, this Court also finds it unnecessary to determine Blanca's other arguments dealing with enforceability of the judgment lien.

However, it is necessary to address Blanca's argument that the trial court violated well established principles of equity when it failed to require Verna to satisfy her judgment from Robert's non-homestead assets prior to resorting to Blanca's homestead. However, at the hearing on Verna's application for partial distribution, the trial court ruled that Robert's estate was not solvent enough to grant Verna's request to be

support the appellant's argument that the appellee's lien was extinguished when she executed a quit claim deed to her former husband after the divorce decree was entered. I disagree.

The majority overlooks a statement by the *Grattan* Court which directly addresses this issue. After concluding that the judgment in that case did not create a lien, the Court noted: "Even if the judgment should be construed as constituting a lien against the home place, such right was clearly eliminated when Mrs. Grattan executed and delivered the quit claim deed to her husband." 323 P.2d at 985. This statement was not necessary to the result the Court reached and was therefore technically *dicta*. Nevertheless, the statement directly addresses the issue before us, and I consider it binding precedent.

Moreover, the Court's statement and the appellant's argument are consistent with the general law concerning the effect of a quit claim deed. As recognized by the majority in a case decided this date, "[a] quitclaim deed made in substantial compliance with statute on conveyances conveys all the right, title and interest, whatever that may be, of the maker thereof in and to the premises therein described." *Anchor Stone & Material Co. v. Pollok,* 344 P.2d 559 (Okla.1959). Moreover, such a deed "conveys every interest of the grantor in the land covered thereby, including vested and possible future interests." *Bonebrake v. McNeill,* 491 P.2d 269 (Okla.1971).

Based on these principles, I must conclude that the lien granted to the appellee in the initial decree ceased to exist after she executed the quit claim deed to her former husband. The later court-approved reaffirmation of that lien in a case in which the appellant was not a party could have no effect on the appellant's interest in the land. I respectfully dissent.

paid in full. However, Blanca has not demonstrated the estate is solvent enough for its assets to satisfy Verna's judgment lien. The trial court did not violate principles of equity in refusing to require Verna to satisfy her judgment from other estate assets.