1998 OK CIV APP 129

In the Matter of the ESTATE OF
Jack Lee FIELDS, a/k/a Jack
L. Fields, deceased.

Jerry A. GADDIS, Personal Represen-
tative of the Estate of Jack Lee
Fields, deceased, Appellant,

v.

Nancy J. FIELDS and Kenneth
Dewbre, Appellees.

No. 89384.

Court of Civil Appeals of Oklahoma,
Division No. 3.

July 31, 1998.

Martin Postic, Jr., Postic & Bates, A Professional Corporation, Oklahoma City, Oklahoma, for Appellant.

Chris D. Caldwell, Ray Bays & Associates, Oklahoma City, Oklahoma, for Appellee Nancy J. Fields.

Kenneth Dewbre, Dewbre & Dewbre, Oklahoma City, Oklahoma, Pro Se.

## OPINION

ADAMS, Judge:

¶1 Appellant Jerry A. Gaddis, Personal Representative of the Estate of Jack Lee Fields, a/k/a Jack L. Fields, deceased, appeals a trial court order awarding "a one-half (1/2) interest in and to the homestead property in its entirety" to Appellee Nancy J. Fields (Mrs. Fields), surviving spouse of the deceased, and assessing against the estate the payment of attorney fees to Kenneth Dewbre, Mrs. Fields' former attorney, for services incurred during her attempt to include certain trust assets in the probate estate. For reversal of the orders, Gaddis alleges that (1) the services performed by Mr. Dewbre did not confer a substantial benefit on the estate, (2) the trial court's use of their contingent fee agreement in determining the attorney fee was contrary to *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, and (3) the trial courterred in determining that Mrs. Fields' homestead right encompassed the entire duplex property.[1] After reviewing the record, we conclude that Gaddis failed to preserve for our review any of his allegations of error.

## FACTS

¶2 The Fieldses were married in December of 1980, divorced in September of 1984, but reunited in March 1985. In September of that same year, they moved into a duplex Mr. Fields had built on a residential lot

---

1. Gaddis interprets the word "homestead" in the trial court's finding that "Mrs. Fields should be awarded a one-half (1/2) interest in and to the homestead property in its entirety" as "the entire duplex property." Mrs. Fields does not dispute this interpretation, so we will treat the trial court's order accordingly.

within the City of Moore, Oklahoma, that he had purchased in his own name while they were apart.[2] For extra income, they leased the remaining half of the duplex.

¶3 The Fields' divorce was legally set aside in 1988, and in 1990, Mr. Fields created a revocable trust, the Jack L. Fields Family Trust, to which he transferred certain real and personal property. Upon his death, the trust provided, *inter alia*, that Mrs. Fields would receive the property located at 1205 Sequoyah Court,described as "The South half (S/2) of Lot Thirteen (13) in Block Twenty-four (24) of the SILVERLEAF MANOR SECTION 6 to Moore, Cleveland County, Oklahoma." In November of 1991, Mr. Fields died, survived by Mrs. Fields and his three adult children from a prior marriage. After his death, Mrs. Fields continued to reside in half of the duplex and lease the other half.

¶4 Mr. Dewbre filed a petition for letters of administration on behalf of Mrs. Fields, claiming her husband had died intestate and requesting she be appointed personal representative of his estate. Mr. Fields' son, Appellant Jerry A. Gaddis, objected there to and produced a copy of the Last Will and Testament of Jack L. Fields under which Gaddis was appointed executor. The will, which provided that the residue of Mr. Fields' estate should be set over to his family trust, was admitted to probate and Letters Testamentary were issued to Gaddis, as Personal Representative of the Estate of Jack Lee Fields, a/k/a Jack L. Fields, deceased.

¶5 Eventually, Gaddis moved for approval of his Final Account and for an order to distribute the estate. Mrs. Fields filed a motion alleging that certain bank and invest-ment accounts Mr. Fields had transferred to the family trust were jointly acquired and should be included in the probate estate so that she could make an decision whether to take her intestate share pursuant to 84 O.S. 1991 § 44, or under the will.[3] Gaddis objected to her motion, arguing the accounts were the decedent's separate property. The trial court denied Mrs. Fields' motion and she appealed. In Case No. 83,958, another division of the Court of Appeals agreed with Mrs. Fields, reversed the order, and remanded the case with directions that the trial court determine the amount of the accounts that was "due to the joint industry or other wise enhanced by the Fields' coverture." That decision became final.

¶6 After a hearing on the status of the accounts, the trial court filed a minute order, finding that "[r]etirement fund jointly acquired asset and 47% of funds subject to S/S [surviving spouse] election." At the parties' request, a subsequent hearing was held to clarify what accounts constituted the "retirement fund" and the exact date of valuation for the marital portion of that fund. That same day, the trial court filed another court minute,finding that "all funds at time of death should be divided giving widow 47%."

¶7 Three months later, Mr. Dewbre filed both an Application to Withdraw as attorney of record and a Notice of Attorneys' Lien Claim, explaining therein that Mrs. Fields terminated his legal services after he had negotiated a $140,000 settlement for her. One day after the trial court granted Mr. Dewbre's withdrawal request, Gaddis applied for approval of a family settlement. At the hearing held on that matter, the trial court denied both the request for a continuance by Mrs. Fields' new attorney and the proposed

---

**2.** The warranty deed, dated and filed on September 19, 1985,names "Jack L. Fields, a single man," as the purchaser and describes the property subject to this appeal as "Lot Thirteen (13) BlockTwenty-four (24) SILVER LEAF MANOR, SECTION 6, an Addition to Moore,Cleveland County, Oklahoma, according to the recorded plat thereof."

**3.** For the estate of a decedent who dies on or after July 1,1985, 84 O.S.1991 § 44(B)(1) and (2), provides, in pertinent part, that:
1. ... no spouse shall bequeath or devise away from the other so much of the estate of the testator that the other spouse would receive less in value than an undivided one-half (1/2)interest in the property acquired by the joint industry of the husband and wife during coverture.
2. The spouse of a decedent has a right of election to take the one-half (1/2) interest in the property as provided in paragraph 1 of this subsection in lieu of all devises,legacies, and bequests for the benefit of the spouse contained in the last will and testament of the decedent.

family settlement. Gaddis then filed a motion to require Mrs. Fields to account for funds she received from renting the duplex and leasing an automobile owned by the trust. That motion was sustained, and after Mrs. Fields accounted as ordered, Gaddis moved to have the funds surcharged against her share of the estate. His motion was denied.

¶ 8 Later, Mrs. Fields filed an application requesting a determination of her "marital interest" in the homestead property so that she would be able to decide whether to take her intestate share and claiming an undivided one-half interest in the homestead property because it was acquired during her marriage to Mr. Fields. She further requested a determination of the amount of attorney fees due and owing to Mr. Dewbre for his services under their contingent fee agreement and to tax that amount against the estate. Gaddis filed his objection to all three requests,[4] and Mr. Dewbre filed a response explaining his past legal services for Mrs. Fields.

¶ 9 Based on the arguments of counsel at the hearing and its examination of the record, the trial court filed an order finding as follows: (1) The entire estate benefitted from the representation of Mrs. Fields by Mr. Dewbre; (2) the fees for that representation should be assessed against the estate in the amount of $35,000; (3) Mrs. Fields should be awarded a one-half interest in and to the homestead property in its entirety; and (4) that there is no reason for delay and this order should be filed immediately.[5] Gaddis

filed this appeal, and the next day, Mrs. Fields filed her election to take her intestate share. In addition to filing separate responses to Gaddis' petition in error, Mrs. Fields and Mr. Dewbre have filed separate answer briefs.[6]

## ANALYSIS

¶ 10 Probate proceedings are equitable in nature. While we may and will examine and weigh all the evidence, this court cannot disturb the findings and decree of the trial court unless found to be clearly against the weight of the evidence. *Matter of Estate of Bartlett*, 1984 OK 9, 680 P.2d 369.

¶ 11 For his first argument for reversal of the attorney fee award, Gaddis contends that the services performed by Mr. Dewbre benefitted only Mrs. Fields, not the entire estate, and therefore should not be paid out of estate funds. He claims that the record in this case makes it clear that the inclusion of the trusts assets in the probate estate increased Mrs. Fields' share while decreasing the share of Mr. Fields' three children and that the estate will suffer a loss, not a benefit, by payment of Mr. Dewbre's fees, but fails to cite anything in the record to support his position.

¶ 12 We note, however, that the Designation of Record filed by Gaddis indicates that no stenographic record was made at the April 8, 1997 hearing and no narrative statement in accordance with Okla. Sup.Ct.

---

4. Gaddis specifically objected to Mrs. Fields' request concerning her marital interest, arguing under proposition three that the "whole homestead" occupied by Mrs. Fields is only the half of the duplex in which she and decedent were living, and that the trust's outright devise of that half to her "is a better provision under intestate succession which just grants to [Mrs. Fields] the right to occupy the homestead *and receive one-half of it (assuming this Court determines the property was acquired during the marriage of the parties through their joint industry)."* (Emphasis added.) He then argued in his conclusion that Mrs. Fields' "right in and to the residential homestead is no more than an undivided one-half interest in and to the *half of the duplex property occupied by the decedent and [Mrs.Fields] as their residence."* (Emphasis added.)

5. Although the language in the fourth finding does not track the language of 12 O.S.Supp.1995 § 994(A), we need not consider the question whether the orders are appealable. As orders "setting apart property" or "affecting a substantial right," they are interlocutory probate orders appealable by right. 58 O.S.1991 § 721(4) and (10) and Okla.Sup.Ct.R. 1.60(h). *See also Hixson v. Cook*, 1963 OK 273, 379 P.2d 677 (if no appeal is taken from order setting apart homestead, order becomes final).

6. Mr. Dewbre's answer brief addresses the trial court's award of attorney fees, whereas Mrs. Fields' brief addresses the trial court's assessment of those fees against the estate and the award of an undivided one-half interest in the probate homestead in her favor.

R. 1.30, 12 O.S.Supp.1997, Ch. 15, App. 1, or statement in accordance with Okla. Sup.Ct. R. 1.31, 12 O.S.Supp.1997, Ch. 15, App. 1, is contained in the record transmitted on appeal. The party appealing has the duty to procure a record sufficient to demonstrate the error of the trial court. *Chamberlin v. Chamberlin*, 1986 OK 30, 720 P.2d 721. In the absence of a complete record, we must presume the trial court did not err. *Hamid v. Sew Original*, 1982 OK 46, 645 P.2d 496. Without examining all the evidence considered by the trial court at that hearing, we cannot conclude, as we must in order to reverse, that the trial court's decision was clearly against the weight of the evidence. Accordingly, we must assume the trial court's decision that the entire estate benefitted from the representation of Mrs. Fields by Mr. Dewbre was responsive to the evidence presented at the April 8, 1997 hearing and affirm that decision.

¶ 13 Gaddis next alleges that "the trial court erred in using a contingent fee agreement as a basis for determining the reasonable fee for [Mr. Dewbre] without considering his actual time incurred in representing [Mrs. Fields]." He complains that "nothing was presented to the District Court" to meet the criteria required by *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, and that the trial court did not set forth with specificity the facts and computation to support the award.

¶ 14 Mr. Dewbre, who appeared on his own behalf at the hearing, disputes Gaddis' claim, pointing out that the trial court's decision was made after hearing oral testimony regarding the attorney fees. When a question on appeal presents the issue of reasonableness of attorney fees awarded by the court, an abuse of discretion by the trial judge is the standard of review. *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659. To reverse such an award, it must be found that the trial court made a clearly erroneous conclusion and judgment, against reason and evidence. *Abel v. Tisdale*, 1980 OK 161, 619 P.2d 608. As with Gaddis' first argument, the lack of a

transcript makes it impossible to examine all the evidence considered by the trial court. Therefore, we must assume that the trial court's decision to assess the fee for Mrs. Fields' representation against the estate in the amount of $35,000 was responsive to the evidence and affirm.

¶ 15 For his final argument for reversal, Gaddis alleges that the trial court erred in determining Mrs. Fields' "homestead right" to encompass the entire duplex property. He contends that the "whole homestead," in this case, is only the half of the duplex she and Mr. Fields actually occupied when he died, relying primarily on 58 O.S.1991 § 311, which provides that "[u]pon the death of either husband or wife, the survivor may continue to possess and occupy the *whole* homestead, which shall not in any event be subject to administration proceedings, except as in this title provided, until it is otherwise disposed of according to law." (Emphasis added).

¶ 16 Unlike his prior arguments, we will consider this argument because both parties concede in their briefs that: (1) the duplex property was jointly acquired during the Fields' marriage and thus, Mrs. Fields would be entitled to an undivided one-half interest in the duplex property as her intestate share; (2) Mrs. Fields has continued to occupy the duplex property since Mr. Fields' death; and that, (3) both during Mr. Fields' lifetime and since his death, one-half of the duplex has been rented out for additional income. Admissions in an appellate brief are acceptable as material supplementing the record. *Deffenbaugh v. Hudson*, 1990 OK 37, 791 P.2d 84.

¶ 17 The importance of these concessions will be better understood with a brief review of the laws of homestead and homestead rights. The homestead mentioned in § 311 and which Gaddis' argument addresses, is the "probate homestead," as distinguished from the "constitutional homestead" exempted to the owner in his lifetime as head of the family pursuant to Art. 12, § 1 of the Oklahoma Constitution and its statutory twin, 31 O.S.1991 § 2.[7] Whereas the con-

7. The version of Art. 12, § 1 of the Oklahoma

Constitution, in effect on May 6, 1997, the date

stitutional homestead is intended to protect the family from creditors, the probate homestead gives the surviving spouse and/or child a special, individual right of lifetime occupation which is intended to protect the survivor against all persons (except holders of certain enforceable liens). In order for a probate homestead to attach or vest, § 311 requires that two contingencies occur: (1) a survivor with the statutory family status—spouse or minor child; and (2) an existing occupation of the premises which the survivor intends to continue. *Matter of Estate of Wallace,* 1982 OK 80, 648 P.2d 828.

¶ 18 In this case, the *existence* of the proper family status or the occupation is not at issue—only the *extent* of the occupation in a duplex in which the surviving spouse resides in one half and leases out the other. Despite conceding that the Supreme Court has ruled that homestead cannot be partitioned, *see Gassin v. McJunkin,* 173 Okl. 210, 48 P.2d 320 (1935) and *Holmes v. Holmes,* 27 Okl. 140, 111 P. 220 (1910), Gaddis claims that the denial of that right exists "while possessory right endures,"and then argues that: (1) the partition of the duplex property to create a separate legal description and title to the rental half of the duplex would not affect the right of Mrs. Fields to occupy and possess the half in which she lived with Mr. Fields, and (2) that "to grant her homestead in the *entire* duplex property provides her the rent from the rental half of the duplex and deprives the children of the decedent—the other heirs to such property—of their rights in the property."

¶ 19 Contrary to Gaddis' argument—based on the premise that the homestead right is only the right to occupy *the building* in which the family resides (or a portion thereof, as he contends in this case)—the type of structure, bi-family or multi-family, is irrelevant. In *In re Estate of Gardner,* 122 Okl. 26, 250 P. 490 (1926), after the widow of the decedent elected to take her intestate share, his two adult daughters from a prior marriage objected to having two lots set apart to the widow as a homestead, because there were two separate buildings, one being the one-room cottage located at the back of the lots where the widow and the decedent lived at the time of his death and a two-story building at the front of the lots containing four separate apartments, which were rented to tenants. The daughters argued that because the lots were being used for both business and homestead purposes, the property could not all be legally held as homestead and could not be set apart as such to the widow.

¶ 20 After finding that the lots had been used and occupied as a "business homestead" and that it would be impractical to divide, the county court determined the property, worth $17,000, should be sold, and that $5000 of the proceeds should be given to the widow for the purchase of another homestead and the remaining be distributed to the heirs. On appeal, however, the district court agreed with the widow that the lots were not susceptible of division, could not be partitioned or sold for any purpose during her lifetime

the trial court order was filed, and which is identical to 31 O.S.1991 § 2, except for addition of the word "village," provided, in pertinent part, that:

> The homestead within any city, town, or village, owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner: Provided, That the same shall not exceed in value the sum of five thousand dollars, and in no event shall the homestead be reduced to less than one-quarter of an acre, without regard to value; And Provided Further, That in case said homestead is used for both residence and business purposes, the homestead interest therein shall not exceed in value the sum of five thousand dollars ...

We do not decide the impact, if any, of the Legislature's amendment, effective November 1, 1997, of Art. 12, § 1(C) (and of 31 O.S.Supp.

1997 § 2(C), which is substantially the same) which provides that:

> The homestead of any person within any city or town, owned and occupied as a residence only, or used for both residential and business purposes, shall consist of not exceeding one acre of land, to be selected by the owner. For purposes of this subsection, at least seventy-five percent (75%) of the total square foot area of the improvements for which a homestead exemption is claimed must be used as the principal residence *in order to qualify for the exemption.* If more than twenty-five percent (25%) of the total square foot area of the improvements for which a homestead exemption is claimed is used for business purposes, the homestead exemption amount shall not exceed Five Thousand Dollars ($5,000.00).

without her consent, and decreed that the lots in their entirety together with the buildings and improvements thereon, be set apart to her as her homestead during the remainder of her life. The daughters then appealed that order.

¶ 21 The *Gardner* Court, 250 P. at 493–494, in determining the extent of the widow's interest in the whole homestead and the extent of her right of occupancy thereof, first considered the language in Art. 12, § 1 of the Oklahoma Constitution that "the rural homestead of any family shall consist of not more than 160 acres of land; that a city homestead shall consist of not more than one acre of land; and that in no event shall the homestead be reduced to less than one-quarter of an acre, regardless of value," and then stated:

> *From this it is manifest that a homestead is the land, and not the buildings thereon; that the homestead right is the right to occupy the land rather than the right to occupy the building; the right to live upon the land, and not the right to live under the roof of the buildings thereon.* The head of a family may live in a tent or under a shade tree if he chooses to do so, or he may build a roof which covers the entire homestead site, if he chooses to do so, but he has a right, in any event, to live upon the land which the Constitution says shall be his homestead, and which in no event shall be reduced to less than one-quarter of an acre. *His surviving widow has the same right to occupy and live upon the same land as a homestead which she and her husband occupied and lived upon as a homestead at the time of his death. The roof under which she resides constitutes no factor in determining the extent of her right of occupancy. It is only an appurtenance belonging to the homestead.* The deceased in this case had selected two adjoining lots as his homestead. They were even less than the minimum homestead unit allowed by the Constitution, but he voluntarily elected to occupy them as his homestead ... *He had a right to live under the roof of a one-room house, or to build any number of separate houses and live in a different one each day, and, so*

> *long as he owed not financial obligations to any one, he was exempt from interference with his occupancy of his homestead. And whatever rights were exempt to him under the existing circumstances were likewise exempt to his surviving widow.* (Emphasis added).

Nor has the Court's position on homestead changed. *See Matter of Estate of Wallace,* 1982 OK 80, 648 P.2d 828 (" '[h]omestead' has both a legal and popular meaning which is identical; *the residence of the family, the place where the home is."* (Emphasis added)).

¶ 22 However, the *Gardner* Court's analysis did not stop there. When addressing the daughters' "business homestead" argument, that Court next considered certain language within their supporting authority—Art. 12, § 1, providing "[t]hat in case said homestead is used for both residence and business purposes, the homestead interest therein shall not exceed in value the sum of five thousand dollars," and the phrase "until it is otherwise disposed of according to law," still found within the current version of § 311. The *Gardner* Court then determined that Art. 12, § 1 and § 311 did not support the daughters' claim for partition, and after discussing caselaw concluding that (1) the phrase in § 311 means that the probate homestead can only be sold for taxes, upon foreclosure of any mortgage executed by both husband and wife or upon execution to enforce judgment for the purchase price or the enforcement of mechanic's lien and that (2) the family home must be preserved intact as against the heirs when the homestead cannot be divided without material injury, held, as follows:

> [I]n view of the fact that the homestead herein claimed is the minimum homestead unit provided by the Constitution, in fact, far less than the minimum allowed by the Constitution, and therefore cannot be reduced and cannot be partitioned *without detriment* to both the estate and the homestead right, and in view of the foregoing authorities, it is our conclusion that the judgment and decree of the district court should not be disturbed. (Emphasis added).

¶ 23 The Supreme Court's position has also remained unchanged on this issue. See *Matter of Estate of Wallace,* 1982 OK 80, 648 P.2d 828 (the "whole homestead" is that property of the family which was impressed with constitutional homestead character at the time of the death). Unlike *Gardner,* which involved two separate buildings with evidence establishing the minimum "'constitutional homestead" unit, there is only one building with a common wall in this case and no evidence in the record before us establishing the size of the "constitutional homestead" as selected by the Fieldses. Again, Gaddis' failure to provide a transcript from the April 8, 1997 hearing prevents us from examining all the evidence considered by the trial court and concluding, as we must in order to reverse, that the trial court's decision was clearly against the weight of that evidence. As with Gaddis' other arguments, we must presume the trial court's implied decision to set apart the entire duplex property as probate homestead was responsive to the evidence and affirm that decision.

¶ 24 Although Gaddis seems to acknowledge in his brief that Mrs. Fields is entitled to receive the rental payments if she is awarded the entire duplex property as probate homestead, we nevertheless address Gaddis' argument concerning the rental payments primarily to prevent further litigation on that issue. After admitting a number of Oklahoma cases define the right of the surviving spouse to receive the income from homestead property, *see Hembree v. Magnolia Petroleum,* 176 Okl. 524, 56 P.2d 851 (1935); *Lusk v. Carter Oil Co. of West Virginia,* 172 Okl. 508, 53 P.2d 656 (1935); *Tarman v. Pierce,* 168 Okl. 348, 33 P.2d 203 (1934), Gaddis distinguishes the cases as involving "income in the form of oil and gas royalties, not rental income from a non-spousal occupied property." However, we conclude this is a distinction without a difference. Homestead property is not subject to administration proceedings. 58 O.S.1991 § 311. An executor or administrator is entitled to the possession of all the real and personal estate of the decedent, and to receive the rents and profits of the real estate, *except the realty and improvements thereon properly belonging to the homestead.* 58

O.S.1991 § 290; *In re Gentry's Estate,* 158 Okl. 196, 13 P.2d 156 (1932). Moreover, the following language from *Lawley v. Richardson,* 101 Okl. 40, 223 P. 156, 157 the authority cited within the cases Gaddis attempts to distinguish, is based on the language of §§ 311 and 290, which clearly do not apply only to royalty income:

It is sufficient to say that, under our Constitution and statutes, the widow and minor children have the right under the homestead law to use and enjoy the premises, *with the rents and profits therefrom during the time it is used and occupied as a homestead,* and that the homestead occupants are not entitled to permit waste, nor to injure or to permit injury to be done to the estate of the reversion. The rights of the widow and minor children during the time the land is used and occupied as such homestead are to be determined by the same rules which have determined the rights of a life tenant.

*See also Hixson v. Cook,* 1963 OK 273, 379 P.2d 677 (The effect of an order setting apart the homestead is (1) to forever free the homestead property of claims for debts of the decedent, and expenses and charges of administration, and (2) to postpone or delay the right of heirs to take possession of the property until the homestead character has ceased to exist.). Based on the foregoing authorities, we must conclude Mrs. Fields is entitled to receipt of the rental payments from the probate homestead.

## CONCLUSION

¶ 25 Based upon the record presented, Gaddis has not demonstrated that any of the trial court decisions subject to this appeal were an abuse of discretion or clearly against the weight of theevidence. Accordingly, the trial court's orders are affirmed.

AFFIRMED

HANSEN, J., and BUETTNER, P.J., concur.